**SCREENLIFE ESTABLISHMENT,**
Plaintiff,

v.

**TOWER VIDEO, INC., and M.T.S.**
**Incorporated, d/b/a Tower**
**Video, Defendants.**

No. 92 CIV. 5010 (SS).

United States District Court,
S.D. New York.

Aug. 24, 1994.

William J. Davis, Scheichet & Davis, P.C., New York City, for plaintiff.

H. Nicholas Goodman, Quirk and Bakalor, P.C., New York City, for defendants.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

Pursuant to 17 U.S.C. § 505 (1977), defendants, Tower Video Inc. and M.T.S. Incorporated, d/b/a Tower Video (collectively, "Tower Video"), move for the costs and attorneys' fees they incurred in defending this copyright infringement action tried before me on December 6, 1993. Pursuant to Fed.R.Civ.P. 68, defendants alternatively move for the costs and attorneys' fees incurred by them subsequent to their Offer of Judgment dated March 29, 1993. For the reasons discussed below, Tower Video's motion for costs and fees is granted.

## I. BACKGROUND

### A. The Instant Action

Defendants' request for costs and attorneys' fees arises out of this copyright infringement action brought by plaintiff, Screenlife Establishment ("Screenlife"), because of Tower Video's sale in the United States of twenty-seven English language laser video disks of the motion picture *Return from the River Kwai* ("*Return*"), which had been manufactured and distributed in Japan with Japanese subtitles and Japanese/English covers. Tower Video had acquired forty-six of the Japanese distributed disks by purchasing them for Tower Records KK, its Japanese subsidiary, and importing them into the United States. Tower Video immediately ceased selling the laser disks upon notice of Screenlife's complaint alleging copyright infringement, and offered a permanent injunction barring it from infringing Screenlife's United States copyright, the delivery of a remaining nineteen *Return* disks to Screenlife, and an award of $348 to plaintiff representing the net profit from the sale of the twenty-seven video disks. In its complaint, Screenlife also sought statutory damages pursuant to 17 U.S.C. § 505. However, by statute, Screenlife could not recover such damages.

Under 17 U.S.C. § 412(2), if a copyright holder has not registered a copyright within three months after the first publication of the work, the holder cannot recover statutory damages or attorneys' fees if the infringement commenced after the first publication, but before the effective date of the copyright's registration. *Return* was first published no later than 1989, but Screenlife's Certificate of Registration was effective in May of 1992, clearly more than three months after the date of first publication. Tower Video commenced retail sales in January of 1992, after *Return*'s first publication and before the effective date of registration. Thus, Screenlife did not have a statutory

claim for damages and attorneys' fees, and it withdrew those claims in the early stages of the litigation. Screenlife, however, retained its claim for actual damages despite Tower Video's consent to an injunction and offer of net profits.

As the case progressed, attempts at settlement of the actual damages claim failed. On March 29, 1993, Tower Video made an Offer of Judgment ("the Offer") pursuant to Fed. R.Civ.P. 68. The Offer included defendants' consent to the entry of an injunction barring Tower Video from importing or selling *Return* in the United States, the delivery of the nineteen remaining *Return* disks to Screenlife and an award of $4,101 (instead of the previously offered $348) in damages and costs. Plaintiff rejected the Offer. The only issue eventually litigated at trial, however, was Screenlife's demand for actual damages, predicated on its claim that Tower Video's sale of the twenty-seven laser video disks reduced the value of its sale and licensing rights in the United States market.

### B. *The Prior Tri–Star Actions*

As explained more fully below, the reasonableness of plaintiff's decision to pursue its claim for actual damages in this action must be assessed in light of two other actions which were outstanding at the time of the trial in this case: one suit involving the right of *Return*'s distributor, Tri–Star Pictures ("Tri–Star"), to terminate its contract with Screenlife's subsidiary, Leisure Time Productions ("Leisure"), 88 CV 9127, and the second, also brought by Tri–Star, sought to determine the validity of trademark infringement allegations made against the title *Return* by Academy Pictures who claimed rights to *Bridge on the River Kwai* ("*Bridge*"), 88 CV 9129. In the distribution agreement action, Leisure also filed a third party complaint against Academy Pictures for tortious interference of contract and Academy Pictures filed a counter-motion for summary judgment against Leisure for its use of the title *Return*, alleging there was confusing similarity to *Bridge*, in violation of the Lanham Act. *See Tri–Star Pictures, Inc. v. Leisure Time Productions, B.V.*, 749 F.Supp. 1243 (S.D.N.Y.1990), *aff'd*, 17 F.3d

38 (2d Cir.1994). At the time of trial of the underlying action before me, the district court in the *Tri–Star* action had held that Academy Pictures had made a strong preliminary showing for relief under the Lanham Act, but that disputed issues of material facts made summary judgment inappropriate. *See Tri–Star Pictures, Inc. v. Leisure Time Productions, B.V.*, No. 88 CIV. 9127 (DNE), 1992 WL 296314, at *7 (S.D.N.Y. Oct. 6, 1992). Academy Picture's claim was subsequently dismissed without prejudice to proceed with those claims in Tri–Star's pending trademark action. *Tri–Star Pictures, Inc. v. Leisure Time Productions, B.V.*, 17 F.3d at 42. The trademark action settled on April 27, 1993.

At the time of the trial of the underlying action before me, moreover, Screenlife's subsidiary, Leisure, had also already lost the declaratory judgment motion brought by Tri–Star seeking the termination of its distribution agreement with Leisure. 749 F.Supp. at 1243. In that action, Tri–Star argued that because Academy Pictures had asserted trademark infringement claims against the use of Screenlife's *Return* title, Leisure had breached its contractual warranty to Tri–Star to deliver *Return* free of any claims that would impair and interfere with Tri–Star's distribution rights. The district court agreed and held that Tri–Star was entitled to terminate its distribution agreement. *See Tri–Star Pictures, Inc.*, 749 F.Supp. at 1243. After the trial in this underlying action, in February 1994, the Second Circuit affirmed the district court's holding. *Tri–Star Pictures, Inc., v. Leisure Time Productions, B.V.*, 17 F.3d 38 (2d Cir.1994).

Prior to Tri–Star's termination of its distribution agreement, Leisure had also entered into agreements with ITC Entertainment ("ITC") and Home Box Office ("HBO") licensing *Return* for television display and home video use. However, theatrical release by Tri–Star was a condition precedent to release by HBO or ITC. Hence, because Tri–Star did not theatrically release *Return*, it has not been released on television nor sold in home video devices in the United States. Thus, at the time of trial in this action, the outcome of the *Tri–Star* appeal was un-

known, Academy Picture's trademark infringement claim was still pending, and a projected release date for *Return* in the United States market was unknown.

## II. *DISCUSSION*

■ An award of costs and attorneys' fees under 17 U.S.C. § 505 is appropriate when the party seeking fees has prevailed in the litigation and the non-moving party's conduct warrants imposing such fees. After reviewing the parties' submissions, I find that defendants' request should be granted.

### A. *Prevailing Party as Defined by 17 U.S.C. § 505.*

■ Section 505 states, in relevant part, that

[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or any officer thereof. Except as otherwise provided . . ., the court may also award a reasonable attorney's fee to the *prevailing party* as part of the costs.

17 U.S.C. § 505 (emphasis added). In order to be deemed a "prevailing party," the party must succeed "on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *see also Ruggiero v. Krzeminski,* 928 F.2d 558, 564 (2d Cir.1991); *Warner Bros. Inc. v. Dae Rim Trading, Inc.,* 877 F.2d 1120, 1126 (2d Cir. 1989). Accordingly, success on a "purely technical or *de minimis*" claim does not qualify a litigant as a prevailing party. *Texas State Teachers Ass'n v. Garland Independent School District,* 489 U.S. 782, 789, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989); *Warner Bros. Inc.,* 877 F.2d at 1126.

■ Logic and the parity of treatment between prevailing plaintiffs and defendants mandated by the Supreme Court in *Fogerty* dictates that defendants should be considered prevailing parties conversely when they successfully defend against the significant claims actually litigated in the action. *See Fogerty v. Fantasy, Inc.,* —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Under this

standard, the defendants here are a "prevailing party" for purposes of Section 505. Before trial, Tower Video had conceded in an Offer of Judgment and in the parties' Joint Pre–Trial Order that Screenlife was entitled to a permanent injunction, to the turn-over of its nineteen remaining disks, and to an award of $4,101 for Tower Video's damages and costs. The only issue litigated at trial was Screenlife's claim for actual damages. After the trial, I ruled in favor of the defendants, denying Screenlife's claim for actual damages. Thus, Tower Video prevailed completely on the only litigated claim in the action. For the reasons discussed in *Hensley, Ruggiero,* and *Warner Bros.,* I find that this makes the defendants prevailing parties in this action.

### B. *The Standard for the Award of Costs and Attorneys' Fees*

■ In *Fogerty v. Fantasy, Inc.,* —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the Supreme Court held that prevailing plaintiffs and prevailing defendants must be treated similarly when courts consider awarding attorneys' fees. As a result of that decision, the unequal standard applied by the Second Circuit and other circuits, under which defendants carried a heavier burden than plaintiffs on a motion for costs and fees is no longer valid. In deciding the motion before me, I adopt the evenhanded approach of *Fogerty,* including the Supreme Court's suggested factors enumerated in *dictum.* However, although I conclude that under the *Fogerty* approach, the defendants should be granted fees, I am convinced that even under this Circuit's pre-*Fogerty* caselaw, defendants' motion for fees could also have been granted.

In holding that prevailing plaintiffs and prevailing defendants were to be treated alike, the Supreme Court in *Fogerty* affirmed its rejection of the British rule, which grants automatic recovery of attorneys' fees to the prevailing party. *Id.* at ——, 114 S.Ct. at 1033. Instead, *Fogerty* recognized that a district court's discretion to grant attorneys' fees is limited only by the mandate that prevailing plaintiffs and defendants be treated similarly.

The Supreme Court in *Fogerty* recognized that there was no precise rule or formula for determining whether to award attorneys' fees, and only directed that courts exercise "equitable discretion" in light of certain considerations. *Id.* In *dictum* contained in a footnote, the Supreme Court provided some guidance as to the factors courts should consider in deciding the appropriateness of a fee award:

> Some courts following the evenhanded standard have suggested several nonexclusive factors to guide courts' discretion. For example, the Third Circuit has listed several nonexclusive factors that court should consider in making awards of attorney's fees to any prevailing party. These factors include 'frivolousness, motivation, objective reasonableness (both in factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' (citation omitted). We agree that such factors may be used to guide courts' discretion, so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.

*Id.* at —— n. 19, 114 S.Ct. at 1033 n. 19 (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3d Cir.1986)).

Prior to *Fogerty*, the Second Circuit had also recognized courts possessed discretionary authority to award attorneys' fees. *In Design v. K–Mart Apparel Corp.*, 13 F.3d 559, 567 (2d Cir.1994); *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 767 (2d Cir.1991); *Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 456 (2d Cir. 1989). Attorneys' fees were awarded to prevailing plaintiffs as a matter of course, but prevailing defendants were required to prove objective unreasonableness, baselessness, frivolousness or bad faith in the plaintiff, bringing its claims. *See, e.g., Folio Impressions, Inc.*, 937 F.2d at 767. *Whimsicality, Inc.*, 891 F.2d at 456.

*Fogerty* now requires that courts in the Second Circuit treat prevailing plaintiffs and defendants similarly. Therefore, using this Circuit's pre-*Fogerty* standards as a guide-

post, I can either award attorneys' fees to the prevailing party as a matter of course or require that the prevailing party prove that its opponents' position was objectively unreasonable, baseless, frivolous or made in bad faith. Awarding fees to the prevailing party, whether plaintiff or defendant, as a matter of course has the benefit of simplicity. Nevertheless, granting such fees in this way might undermine the purpose of the copyright laws for encouraging plaintiffs to bring suits. *See Fogerty,* —— U.S. ——, —— – ——, 114 S.Ct. 1023, 1028–29 (the Copyright Act is intended to motivate creative works by securing a fair return for the author's labor); *Diamond v. Am–Law Pub. Corp.*, 745 F.2d 142, 147 (2nd Cir.1984) ("[t]he principal purpose of the legislation [the Copyright Act] is to encourage the origination of creative works by attaching enforceable property rights to them"). Moreover, the "equitable discretion" discussed in *Fogerty* counsels the balancing of factors adopted by the Second Circuit in awarding fees to defendants.

The Second Circuit has not considered the award of attorneys' fees in copyright cases since the Supreme Court's *Fogerty* decision. However, a recent Fourth Circuit decision, *Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.*, 21 F.3d 59 (4th Cir.1994), contains a helpful discussion of the application of the *Fogerty* factors, and the importance of assessing the objective unreasonableness of a plaintiff's claim in deciding whether to award costs and fees to defendants.

In *Diamond Star Bldg. Corp.*, the plaintiff sued the defendant for using a ranch style house design similar to a design in plaintiff's copyrighted advertising brochure. The plaintiff claimed that it had taken a public idea, a ranch style home, and significantly improved it, rendering the design capable of copyright protection. *Id.* at 60. The district court concluded that the plaintiff's action was without merit, but denied defendant's motion for attorneys' fees. On appeal, the Fourth Circuit reversed the district court. Although the Fourth Circuit found no indication that the plaintiff had acted maliciously or in bad faith in bringing the action, the Court concluded that plaintiff had acted in an objec-

tively unreasonable manner by asserting an "utterly meritless claim" and a "patently frivolous position" which conduct warranted an award of attorneys' fees. *Id.* at 61.

Some of this Circuit's pre-*Fogerty* cases have also affirmed the award of attorneys' fees to defendants, without a finding of bad faith, because a plaintiff's claim was objectively unreasonable. *See Diamond v. Am–Law Pub. Corp.,* 745 F.2d 142, 148 (2d Cir. 1984) (holding that plaintiff's copyright claim was "wholly without merit," and that plaintiff's bad faith was immaterial and need not be proven by the defendant since fees were awarded on a statutory basis); *Mailer v. RKO Teleradio Pictures, Inc.,* 332 F.2d at 749 (recognizing that plaintiff's claim was not capricious because it was technically legal, but that nevertheless the award of fees should be upheld because plaintiff's claim was unreasonable and questionable as a matter of good conscience).

In the instant action, even if Screenlife had a good faith basis to claim that the pre-release importation into the United States of a *de minimis* number of Japanese subtitled infringing laser video disks could appreciably affect the market value of the future negotiation of licensing rights for the release of *Return,* Screenlife, because of the *Tri–Star* action, had no reasonable knowledge or expectation of a fixed release date of *Return* in the United States to quantify its market loss. Thus, it was unreasonable for Screenlife to rely upon an expert who admitted at trial that market value was subject to many factors which depended upon market demand at release, and no expert could, given the *Tri–Star* actions, reasonably project, without speculation, market demand at an unknown time. Moreover, Screenlife did not know whether the movie ultimately released in the United States would have the same title as the Japanese video. Therefore, neither Screenlife nor its expert could reasonably

assess what the impact on market value would be of a differently titled laser disk. Thus, Screenlife's claim or actual damages at the time of trial of this action was, at best, speculative and remote and relying on an expert opinion premised on pure speculation was unreasonable. Hence, Screenlife's action in pursuing its claim for actual damages at trial, once it secured a permanent injunction, the return of Tower Video's unsold copies and an offer of defendants' profits and plaintiff's costs, was objectively unreasonable.

■ In conclusion, this Circuit's pre-*Fogerty* cases, and the post-*Fogerty* cases from other Circuits interpreting *Fogerty,* establish that a prevailing defendant may secure attorneys' fees, pursuant to 17 U.S.C. § 505, once the court finds that the plaintiff's claim was objectively unreasonable; bad faith or frivolousness is not a prerequisite to an award of fees. Accordingly, because I find plaintiff's position at trial to have been objectively unreasonable, Tower Video should be granted costs and fees as the prevailing defendants on the only significant issue litigated at trial.

### C. *Reasonableness of Award*

Screenlife has objected to Tower Video recovering any of its legal fees and costs. Nevertheless, it has only challenged the reasonableness of six items, amounting to a total of $2115.35. Tower Video has voluntarily withdrawn that amount from the fee requests. Having determined that attorneys' fees for the defendants are justified in this case, however, I must now consider the proper award that should be granted.

■ I am awarding Tower Video its fees pursuant to 17 U.S.C. § 505. I need not and do not address whether Tower Video is entitled to its fees and costs under Fed.R.Civ.P. 68, as of the date of its Offer of Judgment of March 29, 1993.[1] Nevertheless, I still find

---

1. Tower Video's entitlement under Rule 68 is a close question Rule 68 provides that a party offered a formal settlement by its opponent is liable for costs if the judgment it obtains is less than the amount it was offered by its opponent. Rule 68, however, is inapplicable where judgment is entered against the plaintiff-offeree and in favor of the defendant. *Delta Air Lines, Inc. v.*

*August,* 450 U.S. 346, 351, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981). Tower Video argues that *Delta Air Lines* does not apply here because judgment was at least partially entered in plaintiff's favor since Screenlife obtained a permanent injunction and Tower Video's net profits. Yet, the only litigated issue in the judgment rendered was plaintiff's claim of actual damages, and a deci-

that an award as of March 29, 1993, the date of the Offer of Judgment, is appropriate in this case because it is at that point that the exact parameters of the issue to be litigated at trial was set. It was from that point forward that Screenlife's continuing in the litigation in light of the difficulties that had plagued *Return*'s release became objectively unreasonable.

It is well established that when awarding reasonable attorneys' fee, courts should "consider the amount of work, the skill employed, damages at issue, and the result achieved." *N.A.S. Import Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250, 254 (2d Cir.1992) (quoting *Oboler v. Goldin,* 714 F.2d 211, 213 (2d Cir. 1983) (per curiam)). In awarding attorneys' fees, this Circuit has approved a higher fee in copyright actions than the defendants' proffered fee of a maximum of $115.00 per hour. *See Alentino, Ltd. v. Chenson Enterprises, Inc.,* aff'd sub nom, *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250 (2d Cir.1992) (the court did not dispute the reasonableness of counsel's $150 hourly rate).[2] I also rely on my knowledge of the other fee applications before me and my recognition of the skill exhibited by Tower Video's counsel. Accordingly, I find defendants fee request to be reasonable, and grant its request for a total award of $37,045.21 representing its costs and fees since March 29, 1993.

Finally, Tower Video's request to enter judgment for the attorneys' fees and costs against both Screenlife and Leisure Time Productions under an alter ego theory is denied. The alter ego status of Leisure and Screenlife was not litigated in this action. I do not accept the statements made during the trial on different issues as sufficient to meet Tower Video's high burden of proof necessary to pierce the corporate veil.

## III. *CONCLUSION*

For the reasons stated above, the motion for costs and attorneys' fees, pursuant to 17 U.S.C. § 505, of defendants Tower Video Inc. and M.T.S. Incorporated, d/b/a Tower Video,

sion was rendered in favor of the defendants denying this claim. Plaintiff, therefore, might not have "obtain[ed] judgment", a sine qua non of Rule 68's application. *Id.*

is **GRANTED.** Screenlife is ordered to pay defendants' costs, including reasonable attorneys' fees, in the amount of $37,045.21. The Clerk of the Court is directed to enter judgment on the motion for costs and fees in accordance with this Opinion and Order.

**SO ORDERED.**

2. The $150 hourly fee was set forth in the district court's decision on remand. *Alentino v. Chenson Enterprises, Inc.,* No. 89 Civ 6753 (LJF), 1992 WL 234956, *2 n. 3 (S.D.N.Y. Sept. 8, 1992).