**CROWN AWARDS, INC.,**
**Plaintiff/Counterclaimant Defendant,**

v.

**DISCOUNT TROPHY & CO., INC.,**
**Defendant/Counterclaimant.**

**No. 07–CV–1400 (CM).**

United States District Court,
S.D. New York.

July 9, 2008.

Richard Zachary Lehv, Fross Zelnick Lehrman & Zissu, P.C., New York, NY, Henry Nicholas Goodman, Quirk And Bakalor, New York, NY, for Crown Awards, Inc.

Marc Ari Lieberstein, James Anthony Lovensheimer, Rebecca Leigh Griffith, Day Pitney, L.L.P. (Times Square), New York, NY, Elizabeth A. Alquist, Day Pitney LLP, Hartford, CT, for Discount Trophy & Co., Inc.

## DECISION AND ORDER AWARDING ATTORNEYS' FEES

McMAHON, District Judge.

Following a bench trial on March 12 and 13, 2008, this Court found that Defendant infringed the copyright in Plaintiff's spinning trophy ("Spin Trophy") through its sale of a substantially similar spinning trophy, which violated plaintiff's exclusive rights under Section 106 of the Copyright Act. The Court permanently enjoined the Defendant from the manufacture and sale of the infringing trophy, and awarded Plaintiff the Defendant's profits from sales of the infringing trophy.

Plaintiff has moved for an award of attorneys' fees, not merely because it prevailed in this lawsuit, but also because Defendant took a simple and straightforward case—the trial testimony took only one day—and tried to make it needlessly complicated. Plaintiff argues that defendant did this by filing a meritless counterclaim for malicious prosecution, a groundless motion for summary judgment, and motions *in limine* that it later withdrew, and by asserting a defense of "independent creation" based entirely on testimony that this Court found "absolutely impossible to believe."

Plaintiff is correct in every particular. To compensate the Plaintiff for the harm it suffered as a result of the infringing activity and the costly and utterly meritless litigation that followed, the Court awards plaintiff reasonable attorneys' fees and costs as provided in 17 U.S.C. § 505.

### FACTS

Plaintiff, Crown Awards, is a retailer of trophies, awards and other similar items sold through mail order catalogs and over the Internet. Plaintiff designed and sells a spinning trophy ("Spin Trophy") for which it owns two copyright registrations. Defendant, Discount Trophy, is a competitor of Plaintiff. (It also sells some products to Plaintiff.) Defendant sold a competing trophy strikingly similar to the Spin Trophy, which infringed on Plaintiff's ex-

clusive copyright in the Spin Trophy. Plaintiff promptly objected. Defendant refused to discontinue the sale of the infringing copy, necessitating this suit. Plaintiff filed the complaint on February 26, 2007. (Declaration of Richard Lehv ("Lehv Decl.") ¶ 8.) Defendant answered the complaint and filed a counterclaim against Plaintiff for malicious prosecution under New York law. Plaintiff spent time and money to answer the counterclaim and to move to dismiss it. (Declaration of Nicholas Goodman ("Goodman Decl.") ¶ 7.).

The Pre–Trial Order was filed on October 1, 2007. (Lehv Decl. ¶ 8.) Late that night and early the next morning Defendant filed a summary judgment motion. (Lehv Decl. ¶ 10.) Again, Defendant forced Plaintiff to expend resources to research and brief the opposition to the summary judgment motion, even though the case was not suitable for summary judgment. (Lehv Decl. ¶ 11.) The principal argument made in Defendant's motion was that its trophy had been independently created, but this defense depended entirely on the Court's accepting the credibility of the Defendant's manufacturer—which, as any competent lawyer knows, makes the case unsuitable for summary judgment. Predictably, the Court denied the summary judgment motion, holding that there were material issues of fact that needed to be decided, (see Dkt. No. 59.) At the same time, the Court dismissed the counterclaim. (Id.)

During the time between the Defendant's filing of its summary judgment motion and receiving the Court's decision denying the motion, the Defendant filed seven (7) motions in limine. (See Dkt. Nos. 45–58.) After Plaintiff reviewed and was preparing to answer the motions, the Defendant withdrew some but not all of the motions. (Lehv Decl. ¶ 12.) Ulti-mately, the Court denied each of the remaining motions in limine. (See Pretrial Conf. Tr., Feb. 29, 2008.)

On the eve of trial, the Defendant further complicated the proceedings by taking a de bene esse deposition of its manufacturer, Mr. Lin, who was supposed to testify at trial. (Lehv Decl. ¶ 14, Dkt. Nos. 64, 65.)

After a two day bench trial, the Court found in favor of the Plaintiff, while completely rejecting Defendant's affirmative defense of independent creation. (See Trial Tr. at 137–151, March 13, 2008.) The Court found that the infringing trophy and the Spin Trophy shared "an extraordinary combination of elements . . . and, indeed, it is admitted by the defendant that they are the only two trophies on the market that share all of these characteristics." (Id. at 147.) The Court found, "The similarity between these two products is not just substantial, it is, indeed, striking to the eye of this lay observer" (id. at 149), and that any differences which existed in the two trophies are "the sorts of small differences that smack of trying to get away with a copy of someone else's work and disguising the fact." (Id.) Further, the Court found that testimony on the affirmative defense of "independent creation to be not only unlikely but absolutely impossible to believe." (Id. at 144.)

The Court commented negatively on three of Defendant's four trial witnesses. (See Trial Tr. at 141–144, 145) The Court found that "Mr. Lin's credibility is non existent," and said, "I do not credit a single word of [and d]iscount entirely, the testimony of Mr. Lin." (Id. at 141.) On the timing of Defendant's order for the infringing trophy, the Court found "no evidence . . . other than the testimony of Mr. Bizier . . . and I do not credit Mr. Bizier's testimony on this point," (Id. at 143–44.) Similarly, the Court said, "I don't actually

find Mr. Fairless to be a particularly credible witness...." (*Id.* at 141–144, 145.)

The Court also found that the date impressed into the mold, which Discount and Mr. Lin rely on as evidence of date of the creation of Defendant's trophy, was not "created while the mold was hardening ... [but] looks to me like it was tooled onto the mold once ... [it] was cold, and, therefore, could have been done at anytime." (*Id.* at 142–43.)

Moreover, the Court on numerous occasions admonished Defendant's counsel concerning conduct relating to the alleged defense of independent creation. (*Id.* at 92–95, 113–14, 127–128, 141–145, Mar. 12–13, 2008.) During the trial, while reviewing the videotaped deposition of Mr. Lin that had been taken to preserve his trial testimony, the Court admonished Defendant's counsel for "misconduct ... during the course of this deposition." (*Id.* at 92–95, Mar. 12, 2008.)

## DISCUSSION

### A. Standard of review for an award of attorneys' fees under 17 U.S.C. § 505

 Section 505 of the Copyright Act, 17 U.S.C. § 505, states that "the court may ... award a reasonable attorney's fee to the prevailing party as part of the costs." An award of attorneys' fees is a matter committed to the Court's "equitable discretion." *Matthew Bender & Co. v. West Publ'g. Co.*, 240 F.3d 116, 121 (2d Cir.2001) (citations omitted); *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995).

 *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455, (1994) is the leading case on awards of attorneys' fees in copyright cases. In *Fogerty*, the Supreme Court held that prevailing plaintiffs and prevailing defendants should be held to the same standard in determining an award of attorneys' fees, pointing to "several nonexclusive factors that courts should consider in making awards of attorney's fees to any prevailing party." *Id.* at 535 n. 19, 114 S.Ct. 1023. These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.; Knitwaves*, 71 F.3d at 1011 (citation omitted). Advancement of considerations of compensation and deterrence means that the Court should look at whether an award of attorneys' fees will not only compensate parties for raising "objectively reasonable claims and defenses," but also "deter infringement." *Matthew Bender*, 240 F.3d at 122.

 Objective unreasonableness of a party's claims or defenses is sufficient to subject a party to an award of attorneys' fees under § 505. *Id.* at 121–22 (citations omitted). Normally this factor should be given "substantial weight." *Id.* at 122. Moreover, "In an appropriate case, the presence of other factors might justify an award of fees despite a finding that the nonprevailing party's position was objectively reasonable." *Id.* (citation omitted); *see also, Video–Cinema Films, Inc. v. Cable News Network, Inc.*, 2003 WL 1701904, at *1 (S.D.N.Y. Mar.31, 2003). For example, "Misconduct before or during litigation can, in appropriate cases, provide the basis for an award of fees." *Matthew Bender*, 240 F.3d at 126.

 These factors are by no means exhaustive, and the Court may consider other factors to determine whether attorneys' fees should be awarded. One such factor the Court may consider is the amount at stake in the litigation. In a case decided by the Seventh Circuit, Judge Posner not-

ed that "the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorneys' fees." *Assessment Techs. of WI, LLC v. WIREdata, Inc.,* 361 F.3d 434, 437 (7th Cir. Mar.17, 2004) (citations omitted). This factor bolsters considerations of compensation, because "when a meritorious claim or defense is not lucrative, an award of attorneys' fees may be necessary to enable the party possessing the meritorious claim or defense to press it to a successful conclusion rather than surrender it because the cost of vindication exceeds the private benefit to the party." *Id.*

## B. Plaintiff should be awarded its attorneys' fees for this litigation under under 17 U.S.C. § 505

### 1. Plaintiff is the Prevailing Party

■ As an initial matter, Plaintiff must show that it is the prevailing party. Here, Plaintiff prevailed in every stage of the litigation. Plaintiff won its motion to dismiss Defendant's malicious prosecution counterclaim; Plaintiff defeated Defendant's motion for summary judgment; the Court denied those of Defendant's motions *in limine* which were not withdrawn; and at trial the Plaintiff prevailed in proving its claim of infringement, while defeating the affirmative defense of independent creation. In all, the Plaintiff prevailed at least five times in this litigation, and has thus more than satisfied its burden to show that it was the prevailing party.

### 2. Awarding attorneys' fees would satisfy the Copyright Act's purposes and considerations of compensation and deterrence

■■ Awarding fees in this case would satisfy the Copyright Act's purposes and considerations of compensation and deterrence. An award of attorney's fees will encourage plaintiffs to litigate meritorious claims of copyright infringement, because the successful prosecution of an infringement claim by a copyright holder would further the policies of the Copyright Act. *Fogerty,* 510 U.S. at 527, 114 S.Ct. 1023 (holding that an award of attorney's fees would encourage both plaintiffs and defendants alike to prosecute or defend meritorious claims.) The Copyright Act's principal purpose "is to encourage the origination of creative works by attaching enforceable rights to them." *Matthew Bender,* 240 F.3d at 122 (citation omitted). An award of attorneys' fees to prevailing parties would encourage the parties to bring meritorious claims and therefore would help demarcate "the boundaries of copyright law ... as clearly as possible in order to maximize the public exposure to valuable works." *Id.* (citations omitted).

An award of fees would both compensate Plaintiff for having to litigate the claim, and would deter future Defendants from acts of infringement, litigating in bad faith and introducing objectively unreasonable components into copyright cases. *See Adsani v. Miller,* 1996 WL 531858, at *16 (S.D.N.Y. Sept.19, 1996) (award of attorneys' fees would advance considerations of compensation and deterrence). As evidenced by the Court's rulings in favor of Plaintiff at every stage of the litigation, Plaintiff's claim was clearly meritorious and the "independent creation" defense was entirely specious. Therefore, an award of attorneys' fees to Plaintiff would rightly compensate Plaintiff for having to litigate a case that Defendant made needlessly complicated.

■ An award of attorneys' fees is particularly justified given that Defendant's actual profits from the infringement were relatively small. As noted above "the prevailing party in a copyright case in which the monetary stakes are small should have

a presumptive entitlement to an award of attorneys' fees." *Assessment Techs.*, 361 F.3d at 437 (citations omitted). "For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from enforcing his rights." *Id.* In this case the Defendant's profits were modest ($22,-845.18). (*See* Dkt No. 71.) Had this been the only possible award, the Plaintiff might not have litigated the infringement, or might have been forced to accept a settlement which would not fully address the wrong the Defendant committed. Moreover, an award of attorneys' fees would ensure that this particular Defendant would not escape from litigation relatively unscathed, since its actual profits in the case are relatively small. They are insufficient to cover the cost to plaintiff of litigating this case. Only an award of attorneys' fees will have an appropriately deterrent effect.

### 3. Defendant's claims and defenses were objectively unreasonable

■ Defendant's claims and defenses in this case were objectively unreasonable. *See Fogerty*, 510 U.S. at 534 n. 19, 114 S.Ct. 1023 (factors to be considered in determining award attorneys' fees include "objective unreasonableness (both in the factual and in the legal components of the case)"); *Adsani*, 1996 WL 531858, at *13 (objective unreasonableness is sufficient to subject a party to an award of attorneys' fees under § 505). Defendant's "malicious prosecution" counterclaim, which the Court dismissed as premature, was objectively unreasonable, since it lacked an essential element—it was brought before defendant had prevailed in the underlying action. *See Ametex Fabrics v. Just in Materials, Inc.*, 1996 WL 428391, at *6–7 (S.D.N.Y. July 31, 1996) (finding "inexcusable" and "undertaken in bad faith" conduct that forced litigant to "brief a legal

issue that is not subject to debate"). Defendant's contention that it had been damaged by the alleged malicious prosecution was also objectively unreasonable. (Dkt. No. 10; Lehv Decl. ¶ 9.) In its responses to Plaintiff's Interrogatory No. 4 asking for "a computation of the damages for which defendant claims plaintiff is liable under defendant's counterclaim," the Defendant identified no evidence and objected to responding on the grounds that "it is premature." (Lehv Decl. ¶ 9, Ex. C.)

Defendant's motion for summary judgment was objectively unreasonable since it was based on the improper notion that this Court could find, on summary judgment, that a declaration was entirely credible. (*Id.* ¶ 10–11)

Finally Defendant's independent creation defense proved objectively unreasonable at trial, since it was predicated on testimony that the court found inherently incredible. For the reasons set forth above, Plaintiff is entitled to an award of attorneys' fees under § 505 of the Copyright Act.

### 4. Awarding attorneys' fees is proper where there is evidence of misconduct by the defendant

■ "If a party's *conduct* is unreasonable, a district court has the discretion to award fees." *Matthew Bender*, 240 F.3d at 124–25. (citation omitted). In the instant case the Court on several occasions admonished the Defendant and its counsel for misconduct during the trial. (*See* Trial Tr. at 92–95, 113–14, 127–128, 141–145, Mar. 12–13, 2008.) For one, the Court questioned the validity of the witness statement of Mr. Lin. In its decision the Court found that the witness statement of a key defense witness "was clearly not his statement at all, but the statement of the attorney for Discount, his only United

States customer." (*Id.* at 141.) The Court pointed out that "[t]he witness statement contained statements that the witness admitted at his deposition ... were false." (*Id.* at 142.) In sum, the Court found "Mr. Lin's credibility [was] non-existent," and did not "credit a single word of [and d]iscount entirely, the testimony of Mr. Lin." (*See* Trial Tr. at 141.)

Moreover, and perhaps most striking was the way Defendant's counsel acted improperly during the *de bene esse* deposition of the above key witness. The Court outlined the misconduct when it said:

> I am tempted to strike this man's testimony *sua sponte* for the misconduct of defense counsel during the course of this deposition.... It's obvious that you were trying either to coach the witness or to stop him from speaking. That is the most unprofessional behavior imaginable.... That is not good lawyering. [That is a]bsolutely appalling. You disrupted his cross-examination. That is unprofessional.... I have to tell you it causes me to draw inferences.

(*Id.* at 92–94, Mar. 12, 2008.)

Because I find an award of attorneys' fees and costs to be proper under the Copyright Act itself, it is not necessary to address plaintiff's argument that the court should award attorneys' fees against counsel pursuant to 28 U.S.C. § 1927.

### C. Amount of Plaintiff's attorneys' fees

 Crown is seeking $150,024.51 ($137,774.31 for Fross Zelnick, and $12,250.20 for Quirk and Bakalor) (including the fees and costs associated with the preparation of this motion) for its reasonable fees and costs through March 31, 2008. (Lehv Decl. ¶¶ 3–23, Exs. A–C; Declaration of Nicholas Goodman ("Goodman Decl.") ¶¶ 4–9, Ex. A.)

The Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), set forth the standards for calculating reasonable attorneys' fees, which are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" The starting point for the Court is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" supported by "evidence supporting the hours worked and rates claimed." *Id.* at 433, 103 S.Ct. 1933. This base amount is generally referred to as the "lodestar." *Cruz v. Local Union No. 3 of IBEW,* 34 F.3d 1148, 1159 (2d Cir.1994). There is a "strong presumption" that the lodestar represents a reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

Attached to this memorandum's supporting Declaration of Richard Z. Lehv are copies of the invoices Plaintiff's Counsel, Fross Zelnick Lehrman & Zissu, P.C. ("Fross Zelnick") sent to Crown Awards, Inc. (Lehv Decl. ¶ 3, Ex. A.) Also attached to the supporting Declaration of H. Nicholas Goodman are copies of Quirk and Bakalor, P.C.'s ("Quirk") invoices for their representation of Crown in defense of the counterclaim for malicious prosecution. (Goodman Decl. ¶ 4, Ex. A.) The invoices detail the number of hours spent along with the hourly rate, as well as reasonable costs associated with the litigation, such as photocopies and Lexis/Westlaw fees. (Lehv Decl. ¶¶ 3, 6, 19, 24; Goodman Decl. ¶¶ 4–9). The fees only calculated from the invoices total $145,613.15 ($133,362.95 for Fross Zelnick and $12,250.20 for Quirk), and costs have totaled $4,411.36. (*Id.*) These amounts include fees and costs through March 31, 2008. (Lehv Decl. ¶¶ 3–6, 24 Exs. A–C.) (A fee award should usually include monies spent on the fee motion).

Fross Zelnick's hourly rates for legal services have repeatedly been found to be fair by courts evaluating them. *See, e.g., J & J Snack Foods, Corp. v. Earthgrains Co.,* 2003 WL 21051711, at *7 (D.N.J. May 9, 2003); *Tri–Star Pictures, Inc. v. Unger,* 42 F.Supp.2d 296, 304–05 (S.D.N.Y.1999); *Moss v. Gryphon Dev., Inc.,* SACV 00–347 AHS at 4 (C.D. Cal. filed Sept. 3, 2002); *see, also,* Lehv Decl. ¶¶ 19–24. Moreover, Fross Zelnick staffs its cases very efficiently—generally staffing the case with only one partner and one associate from the firm. (Lehv Decl. ¶ 19) This reduced the cost to Crown and keeps Fross Zelnick's fees reasonable. (Lehv Decl. ¶ 19, Exs. A–C.)

Additionally, the number of hours spent on the litigation is reasonable. (Lehv Decl. ¶¶ 19–23.) As a result of Fross Zelnick's expertise in the field of copyright law, it does not expend any extra time to understand the issues involved in a copyright case, and therefore spends only a reasonable number of hours to litigate the case. (*Id.*)

Quirk's fees in its representation of Crown are also reasonable, given that they are even lower than the reasonable fees charges by Fross Zelnick. (Goodman Decl. ¶ 4–9.) Quirk's fees have also been held to be reasonable in this District. *Screenlife Establishment v. Tower Video, Inc.* 868 F.Supp. 47, 53 (S.D.N.Y. Aug.24, 1994). Therefore, because of the reasonableness of Fross Zelnick's and Quirk's fees, the Court will award Plaintiff its entire fees and costs (including the fees and costs associated with the preparation of this motion.)

### CONCLUSION

The Court awards Plaintiff its attorneys' fees incurred in defending this action pursuant to 17 U.S.C. § 505. The Clerk of the Court is directed to enter judgment (plaintiff to provide the clerk with a form of judgment) and then to close the file.