Albert R. SPARACO, Jr., Plaintiff,

v.

LAWLER, MATUSKY, SKELLY ENGINEERS, LLP, Thomas B. Vanderbeek, Northern Metropolitan Foundation, Morris Klein, Dahn & Krieger Architects Planners P.C. and Graham & Alexander, Defendants.

No. 97 Civ. 6270(CM)LMS.

United States District Court, S.D. New York.

Aug. 11, 1999.

Philip Furgang, Furgang & Milde, L.L.P., New York City, for Albert R. Sparaco, Jr., plaintiff.

Kevin J. O'Neill, Gogick & Seiden, LLP, New York City, for Lawler, Matusky, Skelly, Engineers LLP, defendant.

Richard D. Rochford, Jr., Nixon Peabody LLP, Rochester, NY, for Northern Metropolitan Foundation, Morris Klein, defendants.

David W. Silverman, Granik Silverman Campbell & Hekker, New City, NY, for Graham & Alexander, defendant.

## DECISION AND ORDER ACCEPTING IN PART AND REJECTING IN PART THE REPORT AND RECOMMENDATION OF THE HON. LISA MARGARET SMITH

McMAHON, District Judge.

On May 14, 1999, I received a thorough Report and Recommendation from the Hon. Lisa Margaret Smith in the above-captioned matter—a suit for copyright infringement, trade name infringement, unfair competition and breach of contract, brought by a surveyor whose site plan for a building site in the Town of Ramapo, New York was superseded by an allegedly infringing copy. I have received objections from all parties, and on July 23, the parties appeared before me to argue their various motions. Upon review of the record, I have decided to accept Judge Smith's recommendations in part and reject them in part, in accordance with this decision.

STATEMENT OF FACTS

Magistrate Judge Smith prepared an excellent statement of undisputed facts, which I adopt as my own. For ease of reading, I incorporate it here.

Plaintiff, Albert R. Sparaco, Jr., entered into a contract with Defendants Northern Metropolitan Foundation for Health Care, Inc. ("NMF"), and its Executive Director, Morris Klein ("Klein"), under which Plaintiff was to survey the site for Heritage House,[1] a proposed development. *See* Contract dated July 15, 1993, attached as Ex. A to Plaintiff's Order to Show Cause. In addition to surveying the site, Plaintiff also created a site plan for which he obtained a Certificate of Copyright Registration in December, 1996. *See* Aff. of Albert Sparaco dated Feb. 11, 1999, ¶¶ 4–10; Ex. B. attached to Am.Comp. The site plan consisted of a depiction of the grade and contours of the land, a proposed location for the building, and the proposed location of utilities. Plaintiff's site plan is dated December 22, 1993. *See* Ex. A. attached to Am.Compl. This site plan was filed with the Town of Ramapo, New York.[2] *See* Am. Compl., ¶ 13.

Klein and NMF hired Defendant Dahn & Krieger ("D & K"), to redesign the building in May, 1996. *See* Aff. of William Dahn dated Nov. 25, 1998 ("Dahn Aff."), attached to Dkt. # 27, ¶ 3; Dahn Aff. dated Feb. 25, 1999, ¶ 4. As a result of the redesign, the footprint of the building changed.[3] *See* Dahn Aff. 2, ¶ 6. As a further result, the site plan prepared by Plaintiff and filed with the Town required amendment. *See* Dahn Aff. 2, ¶ 6.

In 1997, Defendants Klein and NMF contracted with Defendant Lawler, Matusky & Skelly Engineers, LLP ("LMS"), and one of its partners, Defendant Thomas Vanderbeek ("Vanderbeek"), to amend the site plan. *See* Affidavit of Thomas Vanderbeek ("Vanderbeek Aff"), dated Nov. 30, 1998, ¶¶ 3–4. In completing that project, LMS and Vanderbeek "digitized" contours from Plaintiff's site plan onto the amended site plan because the land had already been disrupted by the early stages of construction. *See* Vanderbeek Aff. ¶ 4. The amended site plan by LMS and Vanderbeek, dated June 13, 1997, indicates that it is based on a previously approved site plan by Plaintiff. *See* Ex. C attached to Am.Compl.; Ex. B. attached to Order to Show Cause. It is undisputed that on July 27, 1997, LMS and Vanderbeek's site plan was also filed with the Town of Ramapo. *See* Vanderbeek Aff., ¶ 4.

Defendants Klein and NMF contracted with Defendant Graham & Alexander ("G & A"), to construct the building. *See* Aff. of Leonard Kohl dated Dec. 10, 1998, ¶ 3. That construction was completed by November, 1998. *See* Declaration of Morris Klein, ¶ 3. LMS and Vanderbeek are currently in the process of preparing and filing an "as built" survey and site plan. *See* Aff. of Thomas Vanderbeek, dated Jan. 22, 1999, ("Vanderbeek Aff. 2"), ¶ 4, attached to Dkt. # 40, as Ex. 3.

Plaintiff filed this action on August 22, 1997, alleging copyright infringement, unfair competition under the Lanham Act, unfair competition under New York law and breach of contract. The breach of contract claim appears to be alleged as against Defendant Klein alone. In the Amended Complaint, Plaintiff asserts the following as relevant to all of his claims:

"15. Some time after Plaintiff Sparaco completed the *Heritage House* Work and it was filed with the Town of Ramapo, New York, Defendants NMF, Klein, D & K, and G & A asked Plaintiff

---

**1.** Heritage House is now known as The Fountain View at College Road.

**2.** Plaintiff asserts that the site plan was filed, but does not provide the actual date of that filing. (Am.Compl.¶ 13). None of the Defendants contradict Plaintiff's assertion.

**3.** The footprint of the building is the shape or outline of the building on the surface of the land. (*See* Sparaco Aff. ¶ 9).

Sparaco to provide an estimate of his services to update the *Heritage House* Work. Upon information and belief, Defendants ... then decided not to engage Plaintiff Sparaco and, instead, engaged Defendant LMS.

16. Upon information and belief, after Plaintiff Sparaco published the Heritage House Work, Defendants infringed said copyright by copying and causing to be filed in the office of the Clerk of the Town of Ramapo **a derivative work** (hereafter the "Derivative Work") comprising a substantial copy of the Heritage House Work."

Am.Compl. ¶¶ 15–16 (emphasis supplied).

The original complaint was filed against LMS and Vanderbeek on August 22, 1997. Plaintiff amended his complaint on November 3, 1997, to include NMF and Klein, architects D & K, and builders G & A. Plaintiff filed an Order to Show Cause why a Preliminary Injunction should not Issue, on April 23, 1998.[4] Defendants responded to that motion and subsequently filed motions to dismiss and for summary judgment, as well as various supporting papers. Defendant G & A filed an Affidavit joining in co-defendants' various motions.

In November 1998, shortly after I took the bench here in White Plains, I conferenced this case and learned that it had been in limbo for some time. I sent it to Magistrate Judge Smith for a Report and Recommendation concerning plaintiff's motion for a preliminary injunction and defendants' various motions for summary judgment. As noted above, after reviewing the voluminous record and hearing the parties, she issued a 23 page Report on May 14, 1999.

Rather than summarize the Report, I will deal with each recommendation *seriatim*.

## CONCLUSIONS OF LAW

### 1. Copyright Infringement

Plaintiff's first cause of action, asserted against all defendants, alleges that Defendants "have been copying and making the Derivative Work and, upon information and belief, otherwise selling, and/or otherwise marketing the copyrighted Heritage House Work ...." Am.Compl. ¶ 21. The derivative work referred to varies, it would seem, depending on which defendant is being sued. As to Defendants LMS and Vanderbeek ("the Surveyor Defendants") the derivative work is indisputably their amended site plan. As to Defendants D & K (the designer of the new building) and G & A (the builder of the new building), the derivative work is apparently the building itself, which plaintiff alleged at oral argument to be an infringing derivative work. As to Defendants NMF and Klein ("the Developer Defendants"), the derivative work is both the site plan and the building that was eventually constructed.

■ I have no difficulty agreeing with the learned Magistrate Judge that the First Cause of Action must be dismissed as against D & K and G & A. Plaintiff's theory is that, because the redesigned building necessitated amending the site plan, which resulted in the creation of an infringing derivative work (the amended site plan), the building constitutes an infringing derivative work and its designer and builder can be sued for copyright infringement. This is nonsense. Plaintiff is not an architect. He never designed any building. He designed a site plan to accommodate a building designed by some-

---

4. The Motion for Preliminary Injunction and Memorandum of Law were prepared by Plaintiff's counsel in October, 1997. The Honorable Barbara S. Jones, United States District Judge, issued the Order to Show Cause on November 3, 1997. However, these documents were not filed in the Clerk's office until April 23, 1998. Defendants began to respond to the motion in May and June, 1998. The motion has been pending all the time, but as no temporary restraining order was requested during the pendency of the motion, construction of the building continued during this period. It was completed long ago.

one else. When the building's developers decided they wanted to change the building, they hired a new architect (D & K) who redrew the building. That appears to have required changes in the original site plan. But plaintiff had no guarantee, under either the copyright laws or his contract with Klein, that the building for which he designed his site plan would be built or that his plan would be used with any other building. Indeed, plaintiff's contract expressly *forbade* use of his site plan with any other building (see *infra.*) Plaintiff's only right (if he had any right) was a **copy**-right—that is, a right to keep others from making copies of his original work. As long as the new architect and the builder who carried out the architect's vision did not make copies of Plaintiff's copyrighted work (i.e., his site plan), they did not violate his **copy**-right.

As the Magistrate Judge correctly found, there is no evidence in this record that either D & K or G & A either copied or caused anyone else to copy plaintiff's work. There is also no evidence that D & K or G & A sold or otherwise marketed Sparaco's site plan. Neither does plaintiff allege that these two Defendants directly profited from any infringing activity—or, for that matter, that they were even aware that the other defendants might be infringing Sparaco's copyright. The profits they received for redesigning the building and constructing it—while associated with and resulting from the project—did not emanate directly from the allegedly infringing activity. To the contrary, the allegedly infringing activity (the creation of an amended site plan) emanated from the redesign of the building.

■ With respect to the other defendants, the question is far from clear. In order for Plaintiff to succeed in his action for copyright infringement, he must show that he holds a valid copyright and that Defendants copied elements of his work that are copyrightable. *See Feist v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 362, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). A certificate of registration from the Copyright Office is prima facie evidence of the validity of the copyright, but the court maintains discretion over how much weight that certificate should be given. *See* 17 U.S.C. § 410(c). An effective challenge to the copyright shifts the burden to the plaintiff to "prov[e] all of the multitude of fact underlying the copyright validity." *Carol Barnhart, Inc. v. Economy Cover Corp.,* 773 F.2d 411, 414 (2d Cir.1985).

In *Feist,* the Supreme Court clarified the originality requirement for compilations, emphasizing that "originality, not 'sweat of the brow,' is the touchstone of copyright protection in directories and other fact-based works." 499 U.S. at 361, 111 S.Ct. 1282. The Court did, however, recognize a low standard of originality. A work is original so long as it is "independently created by the author (as opposed to copied from other works), and ... possesses at least some minimal degree of creativity." *Id.* at 345, 111 S.Ct. 1282. The Court stated that "the vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.*

In accordance with the *Feist* decision, the Second Circuit set three requirements for an original compilation: "(1) the collection and assembly of preexisting data; (2) the selection, coordination, or arrangement of that data; and (3) a resulting work that is original, by virtue of the selection, coordination, or arrangement of the data contained in the work." *Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc.,* 945 F.2d 509, 511 (2d Cir.1991). The Court later clarified the third prong of this test, explaining that "creativity in selection and arrangement ... is a function of (i) the total number of options available, (ii) external factors that limit the viability of certain options and render others noncreative, and (iii) prior uses that render certain selections 'garden variety.'" *Matthew Bender & Co., Inc. v. West Pub. Co.,* 158 F.3d 674, 682–83 (2d Cir.1998).

This Circuit recently addressed the limits of the copyrightability of maps in *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739 (2d Cir.1998). Streetwise, a company that produces laminated tourist maps, claimed that another mapmaker had infringed its copyright. The court upheld Streetwise's copyright based upon the "expressive elements in its map, including color, to depict the map's factual content." *Id.* at 747. The court then found that Streetwise's competitor had not infringed upon that copyright because the two maps left "sufficiently different impressions" and thus were not "substantially similar." *See Streetwise* at 746–47. In deciding the infringement issue, the court noted that some of the similar elements of the maps were standard cartographic conventions. The Court also noted that there were substantial differences in the places of interest identified on the maps.

Plaintiff attempts to distinguish its situation from the mapmaker's in *Streetwise* by noting that the only original elements of Streetwise's map were the colors and gridlines used. Plaintiff states that Streetwise is not relevant to the case at hand because it did not address "the copyrightability of: elevation measurements ... used to develop land contours; renderings of specific terrain; measurements and renderings of underground facilities; outlines or footprints of buildings; plans for location of building features; plans for location of trees, curbs, and utility needs—all of the things Plaintiff's site map included." (Plaintiff's Objs. To Report of Magistrate Judge Smith at 8.) Plaintiff instead analogizes his case to *Rockford Map Publishers, Inc. v. Directory Service Company of Colorado, Inc.*, 768 F.2d 145, 149 (7th Cir.1985), where the court held that a mapmaker who created plat maps showing the location, size and ownership of land was entitled to copyright protection because his work was a "new arrangement or presentation of facts." *Id.*

■ After oral argument, I am convinced that Judge Smith was correct when she concluded that there were genuine issues of material fact that would preclude summary judgment on this claim. Much of defendants' argument relies on plaintiff's use of standard cartographic conventions to create a map of existing features of a piece of property, and they are clearly correct when they argue that things like elevation measurements used to develop land contours "are not copyrightable—at least since the so-called "sweat of the brow" theory of copyrightability has been rejected". However, plaintiff has at least suggested that his site plan contained certain creative elements, including his siting of the building and the resulting displacement contours (which are not natural to the site), as well as an original design for and siting of features adjacent to the building, such as a parking lot and lighting fixtures. Defendants insist either that these lack originality or that their amended site plan did not actually copy those elements of plaintiff's map, but I cannot tell on this record whether those arguments have merit. Accordingly, we will take this issue to trial.

■ Defendants rely in the alternative on the merger doctrine, which holds that the expression of an idea—i.e., that which is normally copyrightable—may not be protected by copyright if there are so few ways of expressing the idea that the expression and the idea merge. As the Second Circuit has noted, the merger doctrine is difficult to apply. *See Kregos v. Associated Press and Sports Features Syndicate, Inc.*, 937 F.2d 700, 705 (2d Cir.1991). In *Kregos*, the Court warned that the merger doctrine should not be applied too readily to factual compilations because the result would be that these compilations would never be copyrightable. *See id.*

A court's decision to apply the merger doctrine depends on how the court defines the author's idea. Because of this flexibility, the "'idea' should be defined with reference to 'the balance between competition and protection reflected in the patent and copyright laws.'" *Mason v. Montgomery*

*Data, Inc.*, 967 F.2d 135, 140 (5th Cir.1992) (quoting *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)). Hence, in deciding to give copyright protection to real estate maps, the *Mason* court focused on the mapmaker's creativity in selecting the sources it used, while the court in *Kern River Gas Transmission Co. v. Coastal Corp.*, 899 F.2d 1458 (5th Cir.1990), focused on the monopoly that Kern River would be granted if its competitors were prohibited from using the idea expressed by the company in its map.

*Mason* and *Kern River* illustrate the difficulty courts have in applying the merger doctrine. In *Kern River*, the plaintiff drafted a proposed pipeline route onto a published map and submitted that map to federal and state regulatory agencies for permission to build the pipeline. The court stated that the map they drew was the only effective way to depict the idea of the pipeline, and since the idea of the location was uncopyrightable, the map was, as well. *Id.* at 1463. Even though Kern River "conducted expensive and detailed field work to acquire the information needed to formulate mile-by-mile the precise location of their pipeline," *id.* at 1463, the Court held that "[t]o extend protection ... would be to grant Kern River a monopoly of the idea for locating a proposed pipeline in the chosen corridor, a foreclosure of competition that Congress could not have intended to sanction through copyright law." *Id.* at 1464.

On the other hand, in *Mason*, the court held that the merger doctrine did not apply to real estate maps which showed the location, size, and shape of tracts of land as well as information about the owners because the plaintiff demonstrated that there were differences between Mason's maps and those of his competitors. The court felt that "each mapmaker's selection of sources, interpretation of those sources, discretion in reconciling inconsistencies among the sources, and skill and judgment in depicting the information" would result in maps that were different enough that the merger doctrine was not applicable. 967 F.2d at 138. The *Mason* court noted that the difference between their ruling and the one in *Kern River* was a result of their focus on judgments made in gathering information, not the lines drawn on the map.

When considering the merger doctrine, a court must consider whether a subsequent compiler's work would be "substantially similar." *See Hart v. Dan Chase Taxidermy Supply Co., Inc.*, 86 F.3d 320, 323 (2d Cir.1996) ("the merger inquiry asks whether *all* realistic fish mannequins, no matter how artistic they might be, will necessarily be 'substantially similar' "). Plaintiff is correct that the fact that Defendants' amended site plan (which was admittedly based on Plaintiff's original work) is substantially similar to the original map does not necessarily mean that all site plans would be substantially similar. However, this admission does not preclude the merger inquiry either. The merger doctrine applies if every mapmaker who created his or her own site map would create the same map and then be accused of copyright infringement by Defendant. *See Mason*, 967 F.2d 135 at 138.

Defendants argue that the case at hand is similar to the facts of *Kern River* because Plaintiff's site map was the only effective way of expressing the ideas in the map in a way that the Town of Ramapo would accept, and to allow Plaintiff a copyright over the map would be to allow him a monopoly over the ideas expressed in the proposal. They also argue that Plaintiff has not brought forth evidence (as the Plaintiff in *Mason* did) showing that subsequent mapmakers maps would not necessarily by substantially similar to his map.

Plaintiff responds by distinguishing the facts of *Kern River*. He argues that his situation differs from the plaintiff in Kern River because rather than drawing a pipeline over an existing map, he created the first map of the site. Plaintiff also states that if Defendants had drawn their own

map they would have reached a different result because the skill and judgment that he used are similar to the mapmaker's in *Mason.* (*See* Plaintiff's Reply to Objections by Defendants at 9.)

It appears that some of the same issues of fact that impact on the originality argument—including whether there are alternative ways to express whatever it is that defendants borrowed from plaintiff's original site plan—would need to be resolved before I could rule on a merger doctrine claim.

Thus, the developer and surveyor defendants' motions for summary judgment on plaintiff's first cause of action are denied.

### 2. Lanham Act/Trade Name

■ Plaintiff's second claim arises because, under New York State Education Law § 7209(2) (McKinney's 1995), the surveyor defendants were required to state on their amended site plan that their work was based on Sparaco's approved plan. Therefore, when they filed their amended site plan, they included the legend, "This site plan [is] based on [an] approved plan set entitled 'Heritage House' by A.R. Sparaco, Jr...." Plaintiff contends that, by retaining his name on the amended site plan, all defendants held out the surveyor defendants' work as Sparaco's (a "passing off" or false attribution claim). The complaint further asserts that defendants did this with the intention of confusing the public. At oral argument, it became clear that Sparaco fears that he will be sued by some resident or guest at the building because his name appears on the most recent site plan, even though the design is no longer his.

I agree with the Magistrate Judge that plaintiff's claim here is for false attribution, and I also agree with her determination that it should be dismissed. Professor

Nimmer tells us that "...no false attribution results, and the author accordingly may not object to the use of his name, if the work, although substantially altered, carries a sufficiently prominent notice indicating which portion in fact was written by others, or if the notice merely indicates truthfully that the work is based on or derived from the work of the author, but does not represent that it is created by or authorized by the author." 2 Nimmer on Copyright, § 8D.03[B][1] (1996). Since the legend on the surveyor defendants' amended site plan is no more than a truthful statement that their work is based on plaintiff's, it does not state a false attribution claim under the Lanham Act. Indeed, the very fact that plaintiff asserts that his work was used, but altered, makes the "based on" legend both true and legally inoffensive.

I also agree with Magistrate Judge Smith that plaintiff's failure to provide the court with any evidence of actual confusion or likelihood of confusion, or with any evidence that Mr. Sparaco's name has acquired distinctiveness via a secondary meaning, compels dismissal of his Lanham Act claim even if it be viewed as a claim for infringement of his trade name.[5] Mr. Sparaco should have assembled the necessary information via his own expert witness or market surveys, even before the summary judgment motions were submitted. The fact that the motion sequence in this matter commenced with an application by Sparaco for a preliminary injunction—in support of which he was required to demonstrate likelihood of success on the merits of, *inter alia,* his trade name claim—suggests that Sparaco was well aware of this requirement and chose to hope that the Court would overlook it. If he was not aware of the requirement at the outset, the filing of summary judgment

---

5. The Magistrate Judge did not distinguish among the various defendants when she recommended dismissal of this claim, and I am dismissing it as to all of them. Nonetheless, I note that there is no evidence to indicate that

D & K or G & A either used plaintiff's name in any manner or were involved in arranging for others to use it, so no claim is stated against them regardless.

motions by the various defendants should have alerted him to it. This is not the sort of evidence that cries out for Fed.R.Civ.P. 56(f) relief, as it lies within plaintiff's power to obtain or generate evidence of secondary meaning or confusion; no such evidence in within defendants' control.

### 3. Unfair Competition under New York Law

 Plaintiff's allegation that the use of his name in the "based on" legend on the amended plans constitutes unfair competition under New York trademark law is similarly deficient, as Judge Smith found. While New York's trademark law, Gen. Bus.L. § 360–*l*, does not require proof of actual or likelihood of confusion, as the corresponding Federal law does, it does require that the trademark either be distinctive or have acquired secondary meaning. It also requires proof of likelihood of dilution. As the learned Magistrate Judge noted, a mark that is primarily a surname may not be registered absent a showing of acquired distinctiveness, and personal names are treated by the common law as descriptive terms absent proof of secondary meaning. *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 15 F.Supp.2d 389, 394 (S.D.N.Y.1998). Plaintiff's "mark" is his name—or, more precisely, his initials and his surname—and he has not offered any evidence of secondary meaning in order to show that his mark is distinctive. It was plaintiff's burden to offer evidence that his name and business had become synonymous in the mind of the public. He has not done so. other than to note that there is no other surveyor in this area by the name of Sparaco. This, with respect, does not constitute evidence of secondary meaning. Plaintiff's third cause of action is dismissed.[6]

### 4. Breach of Contract

Magistrate Judge Smith recommended that I deny the developer defendants' mo-

tion for summary judgment dismissing plaintiff's claim of breach of contract against them, on the ground that there are issues of fact for trial. Here I must part company with Judge Smith. The breach of contract claim presents only issues of contract construction, as the underlying facts are undisputed. I agree that the developer defendants' motion must be denied, but that is because plaintiff is entitled to summary judgment on his breach of contract claim—unless this cause of action is preempted by the Copyright Act.

 I note first that there would be no problem with my granting summary judgment against the developer defendants in response to their motion for summary judgment in their favor. A motion for summary judgment searches the record. If it is clear that all of the evidentiary material a party might submit in response to a motion for summary judgment are before the court, that there are no disputed issues of fact and that a non-moving party is entitled to judgment as a matter of law, the district court is free to enter judgment accordingly. *Ramsey v. Coughlin*, 94 F.3d 71, 73–74 (2d Cir.1996); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991).

 This is such a case. The only issues implicated by defendant's summary judgment motion are what a certain term of the parties' contract mean and whether defendants' admitted use of some contours from plaintiff's original site plan in their amended site plan breaches any term of that contract. Contract construction presents a question of law, not of fact. *See Gonzalez v. Norrito*, 256 A.D.2d 440, 682 N.Y.S.2d 100 (1998) (citing *Ligator v. Continental Bank*, 152 A.D.2d 684, 544 N.Y.S.2d 23 (2d Dep't 1989); *Hartford Acc. & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973)). Since the surveyor defen-

---

**6.** Again, Judge Smith did not bother to discuss the positions of the various defendant separately. I simply note that there is no

basis for plaintiff to assert any claim against D & K or G & A, for the reasons set forth in the previous footnote.

dants have never denied that they incorporated some of plaintiff's work into their site plan, there is no disputed issue of material fact. Either that action breaches the relevant contract term or it does not. Thus, defendants cannot be prejudiced by an entry of summary judgment against them.

Judge Smith concluded that there were issues of fact on the breach of contract claim because of a conflict between the developer defendants' assertion that their filing of the LMS plans with the Town of Ramapo was authorized by Sparaco's contract and Sparaco's assertion that the contract authorized only the filing of his unaltered plans. However, as the parties' subjective intent is irrelevant and the words of the contract are unambiguous, I can resolve this dispute by construing the contract. And as I construe the contract, the developer defendants are wrong and plaintiff is right.

The contract at issue is a letter of agreement, entitled Agreement for Professional Services, dated July 15, 1993 and thereafter twice revised. it is on the letterhead of A.R. Sparaco, Jr., and it is addressed to Albert Schunkewitz & Partners, Architects, P.C. (the architects who designed the original building) The contract is signed by three parties: Sparaco, the architect and defendant Morris Klein, representing the owner/developer. It provides, in pertinent part, as follows:

> The survey notes, worksheets, plans, documents and drawings are instrumentalities of the service being provided for use solely for this particular project or application and shall remain the property of the surveyor. The client shall be permitted to retain copies for information and reference in connection with the Client's use of the property surveyed, designed or planned. The drawings shall only be used by the Client for the purpose for which they are prepared, unless the parties agree otherwise in a written and signed instrument and with appropriate compensation to

the Surveyor. The parties hereto acknowledge that the surveyor is the author of the drawings and documents and shall retain all common law, statutory and other reserved rights, including the United States Copyright law, 17 U.S.C. § 101 *et seq.*, and thereby retains sole ownership of the copyright in and to the drawings. In recognition of the Surveyor's claim to ownership and copyright, the Client shall not copy, reproduce, or adapt the drawings or engage in any other activity which would violate the copyright therein without the Surveyor's written consent. To do so shall be deemed a material breach of this contract. The surveyor's drawings, plans or other documents shall not be used by the client, owner, or any other party for additions to this project or for the completion of this project by others, except by a separate agreement in writing, and with appropriate compensation to the Surveyor. Submission or distribution of maps, documents, etc., to meet official regulatory requirements, or for similar purposes in conjunction with this particular project is not to be construed as publication in derogation of the surveyor's reserved rights.

Sparaco contends that this document vests the both ownership of the drawings and copyright exclusively in him, prohibits defendants from using the drawings for any purpose except the one for which they were prepared, and prohibits any copying or adaptation of his drawings without his written consent. Sparaco also notes that the contract specifically prohibits the owner (Klein) or any other party from using any of Sparaco's drawings or other work "for additions to this project or for the completion of this project by others" without his permission and without paying him additional compensation. He claims that the undisputed facts demonstrate that the developer defendants did all of the above, by (1) causing LMS to copy and adapt portions of the drawings, (2) for a project known as Fountain View (i.e., not for the

purpose for which they were prepared, which was the original Heritage House project), (3) which was to be completed by others (i.e., a new architect, D & K, and new surveyors, LMS).

The developer defendants argue that they have done nothing in derogation of the contract, since the same paragraph that sets forth all the above-listed rights grants them permission to file the plans with the Town of Ramapo without violating plaintiff's copyright therein. They claim that is all they did—file the drawings with the Town, albeit in altered form. They reject Sparaco's contention that the plain meaning of the contract is that permission was limited to the filing of drawings, not unauthorized alterations to his drawings.

The plain meaning of the easy-to-understand words used in the contract is as follows:

(1) Defendants may not copy or alter Sparaco's drawings without his written consent.

(2) Any copying or alteration of those drawings constitutes a material breach of the contract.

(3) Defendants may not use plaintiff's drawings except for the purpose for which they were prepared.

(4) Filing the plans with the Town of Ramapo will not be deemed an unauthorized publication of the copyrighted documents.

▇ As contracts go, this is rather straightforward. Plaintiff's intention to prevent defendants from copying or making alterations to his surveyor's drawings without his permission, and without payment to him of additional compensation, is quite clear. Defendants manifested their acquiescence to that provision by signing the document. They bound themselves by their signature not to do what they did— i.e., hire another surveyor and then permit him to modify plaintiff's pre-existing work for use on a revised project. Defendants did not have to grant plaintiff these rights

as a matter of contract, but they did. They are bound by their bargain.

Defendants' argument that they did not breach the contract because of the provision that permits them to file the plans without violating plaintiff's copyright misconstrues the plain meaning of the contract. The purpose for which the drawings were prepared was the construction of a particular building, known as Heritage House and designed by a particular architect (the Schunkewitz firm). That building was never built. Another building, known as The Fountain View at College Road, designed by a different architect and necessitating an altered site plan, was constructed in its place. In light of the many clear and unambiguous contractual restrictions on copying or altering plaintiff's works—including the one that specifically prohibited any use of plaintiff's work to make additions to the project or to allow others to complete it—the only fair reading of the "purpose for which they were intended" clause is that plaintiff granted the developer defendants permission to file his drawings and none other. Moreover, defendants cannot be heard to argue that under this clause are plaintiff's "reserved rights" his *contract* rights, since the sentence uses the term "publication" which is a term of art only in the *copyright* context. The only fair reading of a sentence that says "Filing will not be construed as publication in designation of your reserved rights" is "Filing my plans will not be deemed as unauthorized publication by you;" or, more simply, "You have a license to file my copyrighted plans." Any broader interpretation would vitiate plaintiff's carefully constructed contract rights.

As there is no disputed issue of fact concerning what LMS did by way of copying and altering portions of plaintiff's drawings, and as the language of the contract is unambiguous, I find that the developer defendants breached their contract with plaintiff.

However, that does not end the matter. Section 301 of the Copyright Act preempts

any and all state law rights that "may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law". *Computer Associates Int'l., Inc. v. Altai,* 982 F.2d 693, 716 (2d Cir.1992). Of course, state law claims (such as breach of contract claims) are not preempted where the claim implicates an "extra element" beyond the acts of reproduction, performance, distribution or display. There is a split among my brothers and sisters in the District Court as to whether a breach of contract claim can never be preempted, because the promise inherent in every contract automatically provides the "extra element," *see, e.g. Architectronics, Inc. v. Control Systems, Inc.,* 935 F.Supp. 425 (S.D.N.Y.1996), citing *Nimmer on Copyrights,* § 1.01[B][1][a]; or whether a promise alone is insufficient to save a breach of contract claim that asserts only that defendants did something that is reserved to the holder of a copyright, see *American Movie Classics v. Turner Entertainment Co.,* 922 F.Supp. 926 (S.D.N.Y.1996). The Second Circuit as not yet weighed in with its opinion on this question. It is, however, a question I need not reach, if, in fact, Sparaco's contract does more than merely prohibit defendants from derogating plaintiff's copyright (assuming he has one).

The parties have not briefed this issue—possibly because they, who are more familiar with the contract than I, do not see any preemption problem here—and so I will give them leave to do so. If I am convinced either that the *Architectronics* view is correct or that this contract gives Sparaco rights other than his copyright, then I will direct entry of judgment for plaintiff on his fourth claim, with damages to abide trial.

### 5. Motion for Preliminary Injunction

█ Plaintiff's motion for a preliminary injunction is denied, as there is no showing of irreparable injury. Obviously, it is too late to prevent construction of the building based on the allegedly infringing drawings, which is the injunctive relief plaintiff initially sought (I note that a balance of the equities would not have favored plaintiff's request even if it were still timely). The very injunction that plaintiff now suggests would be appropriate—a mandatory injunction paying royalties to plaintiff *pendente lite* —is both inappropriate (as it gives plaintiff the ultimate relief he seeks) and demonstrates that any injury he has suffered can be compensated by money. Plaintiff's above-mentioned fear that he may be sued at some point in the future by someone who mistakenly assumes that his name on the revised plans renders him liable for defects in the site is purely speculative and therefore does not support the entry of so drastic a provisional remedy as a preliminary injunction—although, as noted at oral argument, it may support an award of indemnity if plaintiff ultimately prevails on his copyright claim.

### 6. Motions for Attorneys' Fees

Plaintiff's motion for attorneys' fees is denied as premature. Plaintiff has not yet prevailed on any claim for which statutory fees are authorized.

█ Pursuant to 17 U.S.C. § 505 (1996), a prevailing defendant in a copyright case may, in appropriate circumstances, be awarded attorneys' fees. *See Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *Williams v. Crichton,* 891 F.Supp. 120, 121–22 (S.D.N.Y.1994); *Agee v. Paramount Communications, Inc.,* 869 F.Supp. 209 (S.D.N.Y.1994), *rev'd in part on other grounds,* 59 F.3d 317 (2d Cir.1995); *Screenlife Establishment v. Tower Video, Inc.,* 868 F.Supp. 47 (S.D.N.Y.1994). Such an award lies within the sound discretion of the Court. *See Fogerty,* 510 U.S. at 525, 114 S.Ct. 1023. As this Court held in *Screenlife Establishment,* a court may award attorneys' fees to a defendant if the court finds that the plaintiff's claim was objectively unreasonable. *See* 868 F.Supp. at 52. There need not be a finding of bad faith or frivolousness by the plaintiff. *See*

**259**

*id. See, also, Williams,* 891 F.Supp. at 121–22 (awarding attorneys' fees to defendant because plaintiff's claim of copyright infringement was objectively unreasonable based upon the same findings that supported the defendant's motion for summary judgment); *Agee,* 869 F.Supp. at 209 (awarding attorneys' fees to defendant because plaintiff put forth no evidence in support of its motion to disqualify counsel).

 Obviously, the surveyor and developer defendants are in no position to press their claim for fees at this time. D & K and G & A are, however, and of all the parties in this case, they present the most compelling case for a fee award. Plaintiff's theories for suing the architect of the new building and the contractor who put it up are, in this Court's opinion, far-fetched. There is no evidence linking either of those parties to the decision to let LMS adapt plaintiff's site plans rather than redo the work from scratch, and no evidence that either of them committed any infringing act. It does not infringe on a surveyor's copyrighted site plan to design a building that will require a revised site plan. And it does not infringe a surveyor's copyrighted site plan for a builder to construct that building from revised site plans that were commissioned and prepared by someone else. Because there is no evidence of copyright infringement by either D & K or G & A, this Court finds that plaintiff's claims against these defendants are objectively unreasonable and awards them reasonable attorneys' fees and costs.

### 7. Subsequent Proceedings

The Clerk is directed to enter judgment dismissing the complaint in its entirety as to defendants D & K and G & A. Those parties are directed to submit papers in support of the amount of attorneys' fees they claim by September 28, 1999.

Summary judgment is granted in favor of defendants on the Second and Third Causes of Action. Summary judgment is denied on the First Cause of Action. As to the Fourth Cause of Action, the affected parties (plaintiff and the developer defendants) have ten days to submit a letter brief of no more than 3 pages on the issue of preemption. I will issue a follow-up decision in September.

The remaining parties shall prepare and submit a Joint Pre–Trial Order, Proposed Findings of Fact and Conclusions of Law, a Trial Memorandum, Motions *in Limine* (if any), and Witness Statements on Direct by October 29, 1999.

This constitutes the decision and order of the Court.