Albert R. SPARACO, Jr., Plaintiff,

v.

LAWLER, MATUSKY, SKELLY ENGI-NEERS LLP, Thomas B. Vanderbeek, Northern Metropolitan Foundation, Morris, Klein, Dahn & Krieger Architects Planners PC and Graham & Alexander, Defendants.

No. 97 CIV. 0627 (CM/LMS).

United States District Court, S.D. New York.

April 2, 2004.

Philip Furgang, Furgang & Milde, LLP, West Nyack, NY, Philip Furgang, Furgang & Milde, L.L.P., New York, NY, for Plaintiff.

Kevin J. O'Neill, Gogick & Seiden, LLP, Michael Eugene Naftolin, Gogick, Byrne & O'Neill, LLP, New York, NY, David W. Silverman, Granik Silverman Campbell & Hekker, New City, NY, Michael F. Orman, Nixon Peabody LLP, Rochester, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

McMAHON, District Judge.

This copyright infringement and breach of contract action has been the subject of several earlier decisions, and familiarity with the facts is assumed. *See Sparaco v. Lawler, Matusky, Skelly Engineers LLP, et al.,* 60 F.Supp.2d 247 (S.D.N.Y.1999); *Memorandum Decision and Order* dated August 25, 2000.

In August 1999, I granted partial summary judgment in favor of Plaintiff on his breach of contract claim against Northern Metropolitan Foundation ("NMF") with respect to liability and set the issue of damages for trial. *See Sparaco,* 60 F.Supp.2d 247 (S.D.N.Y.1999). NMF and Plaintiff thereafter entered into a settlement agreement with respect to the breach of contract claim, pursuant to which Plaintiff received $7,000. In August 2000, I also dismissed Plaintiff's copyright claims, reasoning that the site plan created by Plaintiff consisted only of general conceptualized ideas, not protected expres-

sion. August 25, 2000 Memorandum Decision and Order. That determination was affirmed in part and reversed in part by the Second Circuit. *Sparaco v. Lawler, Matusky, Skelly Engineers LLP, et al.,* 303 F.3d 460 (2d Cir.2002). The Court of Appeals concluded that portions of Plaintiff's site plan provided sufficiently detailed specifications for such items as the location of curbs and buildings to qualify as protected matter under United States copyright laws.

Pending before the court now are motions by Defendants NMF and Lawler, Matusky, Skelly Engineers, LLP's ("LMS") for Summary Judgment dismissing Plaintiff's copyright claims against them, on the ground that Plaintiff has already been compensated for his injury and statutory damages and attorneys' fees are otherwise unavailable. For the following reasons, the motions for summary judgment are GRANTED.

### RELEVANT FACTS

Defendant NMF is a non-profit organization that contracted with Plaintiff Sparaco, a land surveyor, to create a site plan for an assisted living complex which NMF sought to build in Ramapo, New York.

The agreement dated July 15, 1993 and signed on August 5, 1993 provided in relevant part that:

> The survey notes, worksheets, plans, documents and drawings are instrumentalities of the service being provided for use solely for this particular project or application and shall remain the property of the surveyor. The client shall be permitted to retain copies for information and reference in connection with the Client's use of the property surveyed, designed or planned. The drawings shall only be used by the Client for the purpose for which they are prepared, unless the parties agree otherwise in a written and signed instrument

and with appropriate compensation to the Surveyor. The parties hereto acknowledge that the surveyor is the author of the drawings and documents and shall retain all common law, statutory and other reserved rights, including the United States Copyright law, 17 U.S.C. § 101 et seq., and thereby retains sole ownership of the copyright in and to the drawings. In recognition of the Surveyor's claim to ownership and copyright, the Client shall not copy, reproduce, or adapt the drawings or engage in any other activity which would violate the copyright therein without the Surveyor's written consent. To do so shall be deemed a material breach of this contract. The surveyor's drawings, plans or other documents shall not be used by the client, owner, or any other party for additions to this project or for the completion of this project by others, except by a separate agreement in writing, and with appropriate compensation to the Surveyor. Submission or distribution of maps, documents, etc., to meet official regulatory requirements, or for similar purposes in conjunction with this particular project is not to be construed as publication in derogation of the surveyor's reserved rights.

(Adwar Decl. Ex. A, 4)

Plaintiff—and certain associates—created a site plan for NMF and were paid more than $50,000 for that work. (Decl. Michael Orman, Exh. 1, at 376). The site plan incorporated a rendering of both the existing physical characteristics of the site and the proposed physical improvements to the site. As to existing features, the site plan included a basic survey map of the parcel of land, using cartographic conventions to portray boundaries, zoning districts, and plot lines. As to proposed improvements to the site, the plan contained the location and contour of the building footprint, parking lots, curbs, driveways, and walkways.

After construction of the complex was underway, town authorities required NMF to submit an amended site plan. Plaintiff made a written proposal to NMF, offering to prepare the amended site plan for an additional $19,500. (*Id.*, Exh. 9.) However, Dahn & Krieger ("D & K"), the newly hired architectural team for the project, allegedly found defects in Plaintiff's previous work, (*id.*, Exh. 6), and Plaintiff's bid for the new work was rejected. Instead, Graham & Alexander ("G & A"), the manager of the construction project, awarded the job of preparing and filing an amended site plan to LMS. *Id.*, Exh. 10.[1] LMS proceeded to prepare and file an amended site plan. *Id.*, Exh. 12. LMS did not, however, start from scratch (which it could have done), but rather made a digital copy of Plaintiff's site plan and then made changes thereon.

Sparaco commenced this action seeking damages for, *inter alia,* violation of his copyright and breach of the contract.[2] In 2000, I granted summary judgment for Plaintiff on his contract claim and for Defendants on the copyright infringement claim. On May 24, 2002, while an appeal from that decision was pending, Sparaco and the NMF defendants agreed to settle the contract claim, and NMF paid Plaintiff

1. D & K and G & A—although initially sued—have subsequently been dismissed from the case as their was no evidence that either had actually copied the plan and the building itself was not an infringing work.

2. In *Sparaco,* 60 F.Supp.2d 247 (S.D.N.Y. 1999), I construed Plaintiff's Second and Third Causes of Action for unfair competition under the Lanham Act and state laws as pleading causes of action for false attribution because the legend of defendants' amended plan stated it was based on an approved site plan by A.R. Sparaco. Those claims were dismissed for lack of evidence regarding any actual or confusion or likelihood of confusion.

$7,000. In light of the settlement, Judge Leval included the following footnote in his opinion remanding the copyright claim to this court:

By making this ruling, we do not imply that plaintiff can necessarily perfect his claim of copyright infringement, much less that he can show damages in the event he succeeds in proving infringement. We note that plaintiff brought separate claims for infringement of copyright and for breach of his contractual rights. The claim in contract was for breach of Sparaco's contractual entitlement that the site plan would not be copied, reproduced or adapted without his consent, and that he would be employed and paid for any amendment that might be undertaken. That claim was settled. *It therefore appears that Sparaco was compensated for defendants' unpermitted copying and their failure to use his services in amending the plan.* If those losses have already been compensated, it is not easy to see what further damages might remain available for copyright infringement.

*Sparaco,* 303 F.3d at 469 n. 2 (emphasis added). Defendants—no doubt responding to Judge Leval's footnote—now move for summary judgment, arguing that Sparaco's copyright claims can be dismissed without regard either to the validity of his copyright (an issue that, on the record before me, must go to a jury) or their liability for infringement. Assuming for purposes of the motion that the copyright is valid, defendants argue that Sparaco has no viable claim because he has already been compensated by the settlement for any damages he sustained as a result of the copying.

## DISCUSSION

### A. Standard

Under Fed.R.Civ.P. 56(c), a party is entitled to summary judgment if the moving party establishes that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. "[T]he moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). The court will "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor ... and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotations omitted).

### B. Discussion

■ A plaintiff is not entitled to recover twice for the same injury. *See Computer Associates International v. Altai, Inc.,* 982 F.2d 693, 720 (2nd Cir.1992). In *Computer Associates,* the Second Circuit noted that the plaintiff could not receive "double recovery where the damages for the copyright infringement and trade secret misappropriation are coextensive." *Id.* Likewise, the Federal Circuit held only last year that there could be no double recovery where "the breach of contract damages arose from the same copying and included the same lost sales that form the basis for the copyright damages." *Bowers v. Baystate Techs., Inc.,* 320 F.3d 1317 (Fed.Cir. 2003) *See also Graham v. James,* 144 F.3d 229, 238 n. 4 (2d Cir.1998) (any contract damages representing actual copyright damages must be subtracted from the final copyright award to avoid double recovery); *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.,* 118 F.3d 955, 969–70 (2d Cir.1997) (affirming district court's

disallowance of double recovery on copyright infringement and misappropriation of trade secrets claims).

■ When violation of two distinct rights results from the same conduct, multiple recoveries are permissible—but only to the extent that two different types of harm have been suffered. 4 *Nimmer on Copyright* § 14.01[C].

■ Defendants—who assume for purposes of this motion that they would be found liable to Plaintiff for infringement—argue that Plaintiff is not entitled to recover damages for copyright infringement, because he was fully compensated for all his injuries by NMF's settlement payment. Defendants argue that any claim for actual damages under the Copyright Act would flow from the very same injuries for which Plaintiff has already been compensated by the contract settlement.

It is necessary to be quite precise about what Plaintiff's contract rights were, so that we are quite clear about what injuries were compensated by the contract settlement. Under the contract, Plaintiff had the right to prevent NMF from copying his site plan drawings. The contract forbade NMF (or its agents, which would include LMS) to make any copy of the site plan drawings. The making of that copy, which Vanderbeeck conceded in his testimony, breached that contract and gave rise to a claim for damages.

Of course, the contract also gave Plaintiff a second right: the right to compensation in the event his work was used in connection with any future revision to the project, whether done by him or by someone else. Contrary to Plaintiff's allegation, the contract does not literally require NMF to hire Plaintiff to perform any such revisions; in fact, the words of the agreement clearly contemplate that someone else might be brought in to do any such work ("The surveyor's drawings, plan or other documents shall not be used by the client, owner, or any other party for additions to this project or for the completion of this project *by others,* except by a separate agreement in writing, and with appropriate compensation to the surveyor"). So it cannot fairly be said that Sparaco had a contractual right to be hired to perform the revisions, or that the contract settlement was intended to compensate Sparaco for the value of future service which, under the terms of the contract, he was supposed to provide.[3] What can be fairly said is the settlement compensated Plaintiff for his right to some form of compensation for the future use of his drawings. The contract entitled Plaintiff to enter into a separate agreement, with appropriate compensation," if his client (NMF) or any other party (LMS) used Sparaco's drawings in connection with any addition to or completion of the original project. The practical effect of this provision was to give Plaintiff the right to license his work for use by others for a fee. If he chose not to license his drawings, either he would have to be retained to do the work or someone else would have to start from scratch to prepare a new site plan. The one thing that could not happen was the use of his drawings, without his permission and without compensation—which is precisely what did happen in this case.

---

**3.** To the extent that Judge Leval suggests (in the same dictum that gave rise to this motion) that the contract gave Plaintiff a "contractual entitlement. . . .*that he would be employed* and paid for any amendment that might be undertaken. . . . . . . . ." (Emphasis added), I believe he was responding to arguments propounded by Plaintiff, rather than parsing the literal language of the contract. The contract simply does not require NMF to use Plaintiff to revise the drawings. However, the contract clearly entitled Plaintiff to be paid for any amendment that might be undertaken—whether by way of payment for his services or via a licensing fee.

Plaintiff argues that the contract settlement compensated him only for the loss of the second contract right—the right to compensation in some form if the drawings were used in the future. (Pl. Mem at 5.) Where he gets that idea is not apparent. The Settlement Agreement (Adwar Aff., Ex. L, ¶ 3) says, in its preamble, that the parties "desire to compromise and settle *all claims* set forth in Count Four of the Amended Complaint. . ." (emphasis added). And at paragraph 3, it says that "Mr. Sparaco, on behalf of himself, his successors and his assigns, hereby releases NMF, its successors and its assigns from liability with respect to *all contract actions* that have been or could be brought." (emphasis added). The Agreement does not say that Plaintiff was settling only his claim for breach of his contract right to compensation for future use of the drawings; it does not carve out any portion of the breach of contract claim for future litigation. The settlement does recognize Plaintiff's right to pursue his copyright claim, but that statement does not fairly imply that all of the various breaches of contract actionable under the fourth cause of action—including NMF's breach of its duty not to copy Plaintiff's drawings— were not compromised and settled for the sum of $7,000. It certainly does not guarantee Plaintiff the right to pursue a claim on which he cannot recover damages.

Settlement of the contract claim thus compensated Plaintiff for the loss of *both* of his contract rights—the right to prohibit copying and the right to be compensated if any revisions were made. That, to use the language of *Bowers,* is "the same copying and. . .the same lost sales that form the basis for the copyright damages." There is no evidence in the record that the site plan had any intrinsic value except to the site's developer. Sparaco's economic interest in his copyright was in earning either a fee for his services or a licensing fee—which happens to be his economic interest under the contract as well. When NMF breached the contract by permitting LMS to copy Sparaco's plan, without his consent and without compensating him for the re-use of his drawings, Plaintiff was damaged in an amount coextensive with the actual damages he could recover for the infringement of his copyright. Because Sparaco's actual copyright damages and his contract damages are coextensive, settling the one claim eliminated his ability to recover actual damages for the other.

But Plaintiff eschews any intention to ask for actual damages. Instead, Plaintiff seeks *statutory* damages in lieu of actual damages. Plaintiff argues that an award of statutory damages would not constitute double recovery, because the illicit copying violated two separate rights, so the statutory damages redress a "separate harm."

As argued by Plaintiff, his "separate harm" analysis flows from the faulty premise that the contract settlement gave him only "a settled upon amount of compensation for the value of the services he would have performed under the contract had NMF not intentionally breached the contract." For the reasons set forth above, settlement of the contract claim cannot fairly be described as Plaintiff casts it. The contract, as well as his copyright (assuming arguendo that the copyright is valid—a proposition that has yet to be established), entitled Plaintiff to prevent NMF from copying the drawings. To the extent that Plaintiff's separate contract right to prevent the copying of his drawings was settled—and it was—Plaintiff has, as Judge Leval recognized, been compensated for the "fact of the copying," whether in violation of his contract or his copyrights (since the act of copying violated BOTH of those rights). The fact that the breach of contract claim was not preempted does not in any way mean that the measure of damages for the two wrongs might not

turn out to be exactly the same. As the First Circuit noted in *Bowers*, "Not every 'extra element' of a state law claim will establish a qualitative variance between the rights protected by federal copyright law and those protected by state law." *Bowers*, 320 F.3d at 1324. This is the case that proves that statement correct. No additional actual damage flows from the copyright infringement.

■ But that cannot be the end of the matter. I must examine independently the intriguing question of whether Plaintiff's election of statutory damages for the violation of his copyright is barred by his recovery of the equivalent of actual damages for the same violation.[4]

Whether a plaintiff whose actual damages for copyright infringement are co-extensive with his damages under some other theory can avoid the "double recovery" bar by claiming statutory damages appears to be a matter little litigated. The familiar "no double recovery" cases cited above all involved trials at which actual copyright damages were claimed, proved and awarded. One magistrate judge of this Court has permitted an award of statutory damages for violation of a copyright when damages for unjust enrichment and disgorgement or profits were awarded for a concomitant Lanham Act violation, *Lyons P'Ship, LP v. AAA Entertainment, Inc.*, 98 Civ. 0475, 1999 WL 1095608, at *10 (S.D.N.Y. Dec.3, 1999), but I have found no other case discussing this precise question. Nor does Professor Nimmer's

treatise—the bedrock authority on all copyright matters—address the issue in these terms. So I fall back on logic.

Plaintiff here seeks statutory damages for the copyright violation in the same way that a plaintiff who cannot prove damages for a tort or breach of contract claims nominal damages. He seeks them as an acknowledgment that he was injured in two capacities: as a copyright owner as well as a contracting party. Since the law does not require proof of harm to maintain an action for copyright infringement—the mere copying of a work for which someone holds a valid copyright is sufficient to support the claim, 4 *Nimmer on Copyright* § 13.01—there is a certain appeal to Plaintiff's invocation of statutory damages in this situation.

However, statutory damages are not the equivalent of nominal damages. They are a statutorily-created alternative to the recovery of actual damages. Because it can be difficult for a copyright holder to quantify the harm done to him by the act of copying,[5] Congress allows plaintiffs to elect between receiving actual damages (including profits earned by the infringer) or statutory damages. 17 U.S.C. § 504. But if the copyright holder recovers his actual damages, he cannot also receive statutory damages.

Plaintiff has already received, in the settlement of his contract claim, damages equivalent to the actual damages he could elect to receive under the Copyright Act.

4. Although a plaintiff may elect between actual or statutory damages at any time until final judgment is entered, I note that this election does not appear to have been prior to Plaintiff's memorandum of law in opposition to this motion. The Amended Complaint requests "3. Defendants account to Plaintiff . . . for all gains, profits, and advantages derived from Defendants' wrongful acts. 4. With respect to the [Copyright Claim], that Plaintiff . . . recover from Defendants' wrongful acts,

and with regard to the copyright infringement, in lieu thereof should Plaintiff . . . so elect, statutory damages as provided by 17 USC § 504(c)."

5. Actual damages for a copyright violation can include profits lost by the copyright holder, a reasonable license fee, or the fair market value of the work. 17 U.S.C. § 504; *On Davis v. The Gap, Inc.*, 246 F.3d 152, 169 (2d Cir.2001).

Of course, he settled his contract claim; he did not prove it. But as Judge Leval recognized, he accepted an amount that he deemed sufficient to compensate him for the acts that violated his contract rights: the illicit copying of his drawings and their re-use by someone else in a revision of the Heritage House project. Had he elected actual damages for copyright violation, under the principle of *Bowers* and *Computer Associates,* the double recovery rule would bar him from any further award. Since Plaintiff has already settled his contract claim for what, by any analytical measure, are his actual damages, he has gotten everything he is entitled to get under Section 504 of the Copyright Act. He has been fully compensated for his *compensable* harm. In this circumstance, I am hard pressed to see why he should be able to get an additional award—even a *de minimis* award—as "statutory damages."

There are, of course, cases in which a plaintiff was permitted to recover statutory damages for a copyright violation in addition to damages for breach of contract. But in those cases, the plaintiff suffered two separate types of *compensable* harm— one from the copying and one from the breach of contract. For example, in *Kepner–Tregoe, Inc. v. Vroom,* 186 F.3d 283 (2d Cir.1999), the Second Circuit affirmed an award of statutory damages for copyright infringement as well as contract damages, but only because the plaintiff's breach of contract damages were limited to the costs it incurred in litigating a wholly separate lawsuit—one the copyright holder was forced to commence as a result of the breach. Also, in *Aferiat v. Grossman,* 96 Civ. 1774, 1998 WL 99797 (S.D.N.Y. Mar.4, 1998), the court confirmed an arbitration award that gave plaintiff both contract damages and copyrights damages. However, the two damage awards compensated plaintiff for different injuries. The contract damages were for services rendered by the plaintiff architects, who had received only an initial retainer, while the copyright damages were awarded for the actual violation of their copyright.[6] In neither case were the copyright and contract damages equivalent.

Plaintiff does not here contend that his contract settlement redressed him for the cost of litigation.[7] He states that the settlement compensated him for the lost opportunity to revise the site plan himself. Judge Leval apparently did not perceive any difference between those damages and the actual damages Plaintiff would have been entitled to recover as a result of Defendants' copying of his drawing and creation of a derivative work therefrom. Neither do I. Were Sparaco to receive statutory damages on top of that settlement, it would effectively circumvent 17 U.S.C. § 504's requirement that a plaintiff elect between statutory damages and actual damages. 4 Nimmer 14.01[C]("an election to recovery statutory damages *precludes* not only a recovery of actual damages, but also a recovery of defendant's profits.")(emphasis added).

Plaintiff argues that he can recover statutory damages, even though he has already received the equivalent of his actual damages, because damages under the Copyright Act are "designed to serve a variety of purposes other than compensation, including both deterrence and punishment." *Lyons,* 1999 WL 1095608, at *10

6. It was not clear that the arbitrator's copyright damages award was for statutory damages, but the Court presumed it was. It also noted that the damages awarded would be proper as actual damages for the infringer's profits, which were not included in the contract award for the architects' fees.

7. And of course the cost of litigating his contract claim does not fall within the ambit of "actual damages" under the Copyright Act.

(S.D.N.Y. Dec.3, 1999). In *Lyons,* Magistrate Judge Dollinger held that plaintiff could properly recover statutory damages for defendant's violation of his copyright in the character "Barney" and Lanham Act damages for trademark infringement as well. And he did indeed say, as Plaintiff notes, that "the statutory award under the Copyright Act is designed to serve purposes other than disgorgement of unjust enrichment [the goal of Lanham Act damages]."

However as Magistrate Judge Dollinger also said that the key issue to be determined in potential double recovery cases is "the nature of the injury that is compensated, rather than the policies or interests embodied in the multiple legal theories on which a plaintiff prevails." *Id.; see also Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 82 F.Supp.2d 136, 146 (S.D.N.Y. 2000)("In determining whether the two damages awards are coextensive, the key inquiry is whether the awards address the same injury"). Trademark and copyright injuries are quite distinct. The Lanham Act prohibits someone from trading on the good name and reputation that another has built in a recognizable symbol. In enacting the Lanham Act Congress "observed that any trademark statute has a two-fold purpose. One is to protect the public.... Secondly, where the owner of a trademark has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its misappropriation by pirates and cheats." *Monsanto Chemical Co. v. Perfect Fit Products Mfg. Co.,* 349 F.2d 389, 395 (2nd Cir.1965) (citing S.Rep. No. 1333, 79th Cong., 2d Sess. 1–2 (1946), in U.S.Code Cong. Serv. 1274 (1946)); *Empresa Cubana Del Tabaco v. Culbro Corp.,* 123 F.Supp.2d 203, 207

(S.D.N.Y.,2000). Thus, the "disgorgement of unjust enrichment" to which Dollinger referred is the money that the defendant earned by holding himself out as the proper owner of the Barney mark. *Lyons,* 1999 WL 1095608, at *10 (S.D.N.Y. Dec.3, 1999).

Here, defendants did not try to capitalize on Sparaco's name and reputation—the gravamen of a trademark violation. They breached his contract by, *inter alia,* copying his drawings. The Copyright Act prohibits copying. The contract between Sparaco and NFM prohibits copying. The harm being compensated by the settlement is the harm from copying. Therefore, the damages are duplicative.[8]

In this case, the settlement of the contract claim was tantamount to an election of remedies. The fact that the contract damages and actual damages under the copyright law are equivalent means that Plaintiff's decision to settle his contract claim effectively precludes him from recovering statutory damages for the violation of his copyright. Holding otherwise would contravene the purpose of Section 504 and constitute a windfall to Plaintiff.

Of course, the contract settlement was with NMF only—LMS was not a party to the contract. One might, therefore, conclude that LMS ought not be able to claim the "benefit" of the settlement. However, LMS and NMF are jointly and severally liable for the copyright violation. 17 U.S.C. § 504(c)(1); *Fitzgerald Publishing Co. v. Baylor Publishing Co.,* 807 F.2d 1110 (2d Cir.1986); 4 Nimmer 14.04[E][2][d]("where two or more persons have joined in or contributed to a single infringement of a single copyright, they are all jointly and severally liable, and in

---

8. Plaintiff in this case pled a Lanham Act claim; it was dismissed. *Sparaco,* 60

F.Supp.2d at 254–255.

such circumstances...there is but a single set of statutory damages...for which all such persons are liable"). Because liability for the copyright injury is joint and several, and Plaintiff has been fully compensated for that injury, LMS in effect gets a free pass.

█ This leaves the question of whether the availability of costs and attorney's fees under Section 505 of the Copyright Act—a remedy not available for breach of the parties' contract—means that Plaintiff can avoid dismissal of his copyright claim. Put otherwise, the question is whether Plaintiff can pursue his copyright claim for the sole purpose of recovering his attorneys' fees and costs. The answer is no.

Damages, whether actual or statutory, are not, however, the only remedy for copyright infringement, and were Plaintiff to prevail, he would be entitled to recover these additional damages. Section 505 of the Copyright Act provides:

### Remedies for infringement: costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

Thus, a plaintiff who prevails in an action for copyright infringement may be entitled, as part of his remedy, to recover his costs and attorney's fees.

To date, Plaintiff has incurred a substantial obligation to his attorneys over six years of contentious litigation, as well as considerable litigation costs. Obviously, not all of that is attributable to litigating the copyright claim, but some of it is. Costs and attorneys fees for litigating the copyright claim were not available to Sparaco under the contract. To that extent, the monetary remedies for the two claims (copyright and contract) are not coextensive.[9]

The parties have not briefed this issue, but there is no need. A suit cannot be maintained for the sole purpose of recovering attorney's fees. *Hale v. Marsh*, 808 F.2d 616 (7th Cir.1986); *McLaughlin v. State of New York Governor's Office of Employee Relations*, 784 F.Supp. 961 (N.D.N.Y.1992) (Plaintiff must be able to point to some remedy, other than attorney's fees, that will allow her to prevail on a summary judgment motion in her underlying action before she can litigate the availability of fees). As Judge Baer held in a different context where statutory attorneys' fees were authorized—the Americans With Disabilities Act—dismissal of a claim because no relief is available under the statute means that attorney's fees are not recoverable. *Lightfoot v. Union Carbide Corporation*, 901 F.Supp. 166, 167–68 (S.D.N.Y.1995). The case or controversy requirement of Article III of the United

9. Defendants LMS and Vanderbeeck served an Offer of Judgment pursuant to Fed. R. Civ.P. 68 in June 1999. The offer, which was limited to the copyright claim, was for $5,000, inclusive of all statutory costs incurred prior to that date. The effect of such an offer of judgment is discussed in my decision of July 16, 2001—in brief, because the Plaintiff rejected the offer, he stood not to recover any attorney's fees incurred after the date the offer was made unless he took more than $5,000 by way of judgment. Of course, Plain-

tiff has already taken more than $5,000 in settlement of his contract claim. But, because his measure of actual damages for the violation of Plaintiff's copyright (should such violation be proved) is the amount Plaintiff has already recovered for the breach of his contract—$7,000—I am hard pressed to see how defendants can expect that Plaintiff will not be able to recover his statutory attorneys' fees if he prevails in establishing copyright liability.

States Constitution dictates that a plaintiff cannot maintain a suit in which no relief can be granted except for compensation to counsel.

Moreover, a threshold to recovery of statutory attorneys' fees is that the plaintiff must prevail on the claim brought under the statute that authorizes the recovery of those fees. *Lightfoot*, 901 F.Supp. at 168. Sparaco may have recovered all the damages he would be entitled to claim under the Copyright Act, but he has not done so by prevailing on his copyright claim. Indeed, the principal issue that remains to be litigated is whether he has a valid copyright at all, or whether it was obtained by fraud on the Copyright Office. Plaintiff has proved copying, but not violation of his copyright, which means he has prevailed (via summary judgment) on his claim for breach of his contract, but not for violation of his copyright. He cannot keep his copyright claim alive simply to litigate the availability of fees—even fees already incurred.

The remaining claim is dismissed with prejudice but without costs. The Clerk of the Court is directed to close the file.

This constitutes the decision and order of the Court.