303 F.3d 460
Albert SPARACO, Jr., Plaintiff-Appellant-Cross-Appellee,v.LAWLER, MATUSKY, SKELLY, ENGINEERS LLP, Thomas B. Vanderbeek, Northern Metropolitan Foundation and Morris Klein, Defendants-Appellees-Cross-Appellants,Dahn & Krieger Architects Planners PC and Graham & Alexander, Defendants-Appellees.
Docket No. 99-9519(L).
Docket No. 01-9199(CON).
Docket No. 01-9289(XAP).
United States Court of Appeals, Second Circuit.
Argued: June 26, 2002.
Decided: August 29, 2002.

Stephanie Furgang Adwar, Furgang & Adwar, LLP (Philip Furgang on the brief), West Nyack, NY, for Sparaco.
Glen P. Kennedy, Gogick, Byrne & O'Neill, LLP, New York, NY, for Lawler, Matusky, Skelly, Engineers LLP and Thomas B. Vanderbeek.
Richard D. Rochford, Jr., Nixon Peabody LLP (Michael F. Orman on the brief), Rochester, NY, for Northern Metropolitan Foundation and Morris Klein.
Paula M. Gart, L'Abbate, Balkan, Colavita, & Contini, LLP (Michelle J. Simon on the brief), Garden City, NY, for Dahn & Krieger Architects Planners PC.
David W. Silverman, Granik, Silverman, Campbell, & Hekker, New City, NY, for Graham & Alexander.
Before JACOBS, LEVAL, and KATZMANN, Circuit Judges.
LEVAL, Circuit Judge:

1
Plaintiff Albert R. Sparaco, Jr. ("Sparaco"), a land surveyor and planner, appeals from a judgment of the United States District Court for the Southern District of New York (Colleen McMahon, J.) granting summary judgment to defendants and dismissing his claim of copyright infringement. Plaintiff's complaint alleged that various entities and individuals involved in the development of an assisted living facility unlawfully copied his site plan in creating an amended site plan for use in the construction of the facility. We vacate the grant of summary judgment and remand for further proceedings.

BACKGROUND

A. Underlying Events

2
In 1989, defendants Northern Metropolitan Foundation for Health Care, Inc. ("NMF") and Morris Klein ("Klein"), its executive director, undertook to develop an assisted living facility to be known as the "Heritage House" in the town of Ramapo in Rockland County, New York. To develop the design of the facility, NMF hired two architectural firms: Albert Schunkewitz and Partners ("Schunkewitz") and Jerome Meckler Associates ("Meckler"). Schunkewitz and Meckler retained the plaintiff Sparaco to prepare a "site plan" of the development project for submission to the Ramapo planning board.

3
A site plan is a development plan for a plot of land. It specifies existing land conditions, including topography, boundaries, and physical structures, and can also specify the proposed improvements to the site. The town of Ramapo requires an applicant for a building permit and certificate of occupancy to submit a site plan.

4
Schunkewitz and Meckler had prepared "conceptual sketch architectural drawings" of the building "footprint" — the shape or outline of the building on the land surface — and surrounding parking areas. They provided these drawings to Sparaco for integration into the site plan. Sparaco in turn hired Robert Torgerson, a landscape architect and independent contractor, to assist in developing the site plan. Sparaco's personal contribution to the creation of the site plan was minimal. He supervised Torgerson in the refinement of Schunkewitz and Meckler's drawings and made several adjustments in response to suggestions from Ramapo authorities.

5
Financial constraints led NMF to dismiss Meckler, leaving Schunkewitz as the sole architect on the project. In August 1993, Sparaco formalized his involvement in the Heritage House project and executed an agreement with Schunkewitz and NMF. The contract provided, inter alia, that the surveyor's drawings and plans would not be used by the client "for the completion of this project by others, except by a separate agreement in writing, and with appropriate compensation to the surveyor."1 The contract also provided that NMF was not to "copy, reproduce, or adapt the drawings" without Sparaco's written consent.

6
Sparaco completed the site plan in December 1993 and soon thereafter signed and filed it on behalf of NMF with the Ramapo authorities. Ramapo approved the site plan. The final version of the plan was a 14-page document entitled "Complete Set of Drawings for Site Plan `Heritage House' Sheets 1 through 14." In accordance with the Ramapo Planning Board's regulations, the site plan incorporated a rendering of: (1) the existing physical characteristics of the site; and (2) the proposed physical improvements to the site.

7
As to existing features, the site plan included a basic survey map of the parcel of land, using cartographic conventions to portray boundaries, zoning districts, plot lines, abutting parcels, and public streets abutting or crossing the site. It also contained a topographical survey that shows elevations with contour lines, and depicts the location, elevation, size, and slope of existing physical structures such as utility lines, drains, valves, hydrants, and sewers.

8
As to proposed improvements to the site, the plan contained (1) the location and contour of the building footprint; (2) location and contour of parking lots; (3) placement and design of curbs, driveways, and walkways; (4) placement of utilities and provision for sediment and erosion control; (5) landscape design, including the location for plants, trees, and lights; and (6) proposed changes to the contours and elevation of the terrain.

9
In December 1996, Sparaco obtained a certificate of copyright for the site plan. He registered the site plan under the category of a "map" and "technical drawing." Sparaco listed only himself as the "author" of the site plan in his application for registration.

10
Unsatisfied with the building design, NMF removed Schunkewitz from the project and hired defendant Graham & Alexander ("G & A"), a construction management firm, to oversee the continuation of the Heritage House development. NMF also retained defendant Dahn & Krieger Architects Planners PC ("D & K") to provide architectural services. D & K's responsibilities related only to the design of the building. NMF's agreement with D & K stated that "[t]he building footprint and shell shall be in general conformance" with Sparaco's site plan. D & K proposed changes to the design and footprint of the building so as to make a smaller building, which changes required a modification of the prior footprint and related conforming changes to the site plan.

11
Sparaco offered to prepare an amended site plan for an additional payment. NMF rejected the offer and assigned the responsibility of creating an amended plan to defendant Lawler Matusky & Skelly Engineers LLP ("LMS"). Defendant Thomas B. Vanderbeek, an LMS employee, served as the primary engineer on the project. In order to accommodate D & K's new building design and footprint, LMS and Vanderbeek made several digital modifications to Sparaco's plan, including adjustments to the "utility connections" and "proposed gradings." NMF submitted the amended site plan to the Ramapo Planning Department. The amended site plan included the legend, "This site plan [is] based on [an] approved plan set entitled `Heritage House' by A.R. Sparaco, Jr...."

12
According to a senior official of the Ramapo Public Works Building Department, "This revised plan was basically a copy of the approved A.R. Sparaco plan with several minor changes." It included "no change to the parking layout, lighting plan and only minor variations to the sedimentation and erosion control plan and the landscaping plan." The amended plan also copied "Sparaco's boundary survey, topographical contour lines, parking lot and shape, location of driveway, and curbs, and... the original building front from Sparaco's approved site plan." With the use of the amended site plan, the Heritage House project, eventually known as "Fountain View at College Road," was completed by November 1998.

B. Proceedings Below

13
Sparaco's complaint alleged that defendants copied his site plan to create a derivative work in violation of the Copyright Act, and falsely designated the origin of the amended plan in violation of the Lanham Act and New York State laws against unfair competition. The complaint also alleged that NMF and Klein breached their 1993 agreement with Sparaco by using his site plan without his written authorization.

14
After receiving a Report & Recommendation from Magistrate Judge Lisa Smith, see Sparaco v. LMS et al., No. 97 Civ. 6270 (S.D.N.Y. May 14, 1999), the district court at first (1) dismissed all claims against D & K and G & A; (2) granted summary judgment to defendants on the unfair competition claims under the Lanham Act and state law; (3) denied summary judgment to NMF, Klein, LMS, and Vanderbeek on the copyright infringement claim; and (4) denied summary judgment on the breach of contract claim against NMF and Klein. See Sparaco v. LMS et al., 60 F.Supp.2d 247, 250 (S.D.N.Y.1999).

15
As to the contract claim, the district court ultimately found that the contract terms were unambiguous and that Sparaco was entitled to summary judgment. See Sparaco v. Lawler, Matusky, Skelly, et al., No. 97 Civ. 6302 (S.D.N.Y. Sep. 14, 1999). On June 5, 2001, NMF, Klein, and Sparaco settled the contract claim.

16
As to the copyright claim against D & K and G & A, the district court understood Sparaco to allege that the redesign of the building amended his site plan, thus resulting in infringing derivative works — the amended site plan and the building. The court found that neither D & K nor G & A committed infringement, as Sparaco had no copyright interest in the design of the building. The court ruled that "[i]t does not infringe on a surveyor's copyrighted site plan to design a building that will require a revised site plan. And it does not infringe a surveyor's copyrighted site plan for a builder to construct that building from revised site plans that were commissioned and prepared by someone else." Deeming Sparaco's claims against D & K and G & A objectively unreasonable, the court awarded them attorneys' fees and costs.

17
As to the other defendants, the court denied summary judgment on the copyright infringement claim. The court found that although much of Sparaco's site plan contained "standard cartographic conventions to create a map of existing features of a piece of property," it also contained more creative elements that may deserve protection, including the siting of the building, the resulting displacement contours, and the original design and siting of the parking lots and lighting fixtures.

18
Following this decision, the parties submitted various motions to the district court. On August 25, 2000, the district court disposed of these motions. It began by correcting its prior understanding of Sparaco's role in the development of the site plan. Further discovery had revealed that Sparaco's personal contribution to the site plan was substantially less than the court and the defendants originally believed. Most of the contribution to the site plan was by Schunkewitz, Meckler, and Torgerson. However, one month after the district court's first opinion — in September 1999 — Sparaco had procured from Schunkewitz, Meckler, and Torgerson a written "Assignment of Copyright," pursuant to which all three contributors assigned their right, title, and interest in the drawings to Sparaco.

19
Citing our recent decision in Attia v. Society of the New York Hospital, 201 F.3d 50 (2d Cir.1999) — issued after the district court's first opinion — the court ruled that the elements of Sparaco's site plan which it previously found potentially infringed — the siting of the building footprint, parking lot, utilities, light poles and trees, and proposed grading plan — were generalized conceptual ideas, not protected expression. It concluded that the Heritage House project "could not have been constructed from Sparaco's drawings, because they did not include any architectural details at all — just the placement of various features that would eventually be incorporated into architectural and construction drawings." See Sparaco v. LMS et al., No. 97 Civ. 6270 (S.D.N.Y. Aug. 25, 2000). The court therefore dismissed Sparaco's copyright claim.

DISCUSSION

20
Sparaco contends the district court erred in concluding under Attia that copying the site plan would take nothing that is protected by copyright. As noted, Sparaco's site plan contains renderings of two types of features: (1) the existing physical characteristics of the site; and (2) proposals for physical improvements to the site. We discuss them separately because these two categories are governed by somewhat different copyright principles.

A.

21
Sparaco contends that his depiction of the existing characteristics of the site falls within the Copyright Act's protection either of maps, see 17 U.S.C. § 101 (defining "pictorial, graphic, and sculptural works" to include maps), or original compilations, see 17 U.S.C. § 101 ("A `compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."). See Mason v. Montgomery Data, Inc., 967 F.2d 135, 142 (5th Cir.1992) (noting that although "[h]istorically, most courts have treated maps solely as compilations of facts," they may also qualify for protection as "pictorial, graphic, and sculptural works"); 1 William F. Patry, Copyright Law & Practice 247-48 (1994) (noting that "authorship in a map may consist of compilation or pictorial authorship, or a combination of the two").

22
Sparaco's argument would have had considerable force at an earlier time in the development of the copyright law. Since the eighteenth century, the copyright statutes have explicitly named maps as falling within their protection. See, e.g., Copyright Act of May 31, 1790, ch. 15, § 1, 1 Stat. 124, 124 (1790) (repealed 1831) (providing that the "authors of any map [or] chart ... shall have the sole right and liberty of printing, reprinting, publishing and vending such map [or] chart ..."); see also 1 Patry at 247 (noting that copyright protection of maps enjoys a "venerable pedigree"). Copyright's early protection of factual information found justification in the author's labor or "sweat of the brow" in assembling and creating a work. In 1845, Justice Story explained that the maker of a map was protected against copying; another was free to map the same region but was not free to copy information set forth on the first map; he needed to rely on his own labor, skill, and expense to make a second independently conceived map. Emerson v. Davies, 8 F. Cas. 615, 619 (C.C.D.Mass.1845); see also Farmer v. Calvert Lithographing, Etc., Co., 8 F. Cas. 1022, 1026 (No. 4,651) (C.C.E.D.Mich.1872) (in a case alleging infringement of map of Wisconsin and parts of nearby states, noting that "no one has the right to avail himself of the enterprise, labor and expense of another in the ascertainment of those materials, and the combining and arrangement of them, and the representing them on paper"); Blunt v. Patten, 3 F. Cas. 763, 765 (C.C.S.D.N.Y. 1828) (No. 1580) (copyright in navigation chart is violated "when another copies from the chart of him who has secured the copyright, and thereby availing himself of his labor and skill"); see also David B. Wolf, Is There any Copyright Protection for Maps after Feist?, 39 J. Copyright Soc'y U.S.A. 224, 227-28 (1992) (observing that historically copyright's protection of maps derived from the "sweat of the brow" doctrine — which justified protection on the grounds of "the physical effort exerted to get the raw data needed for the map"); Jane C. Ginsburg, Creation and Commercial Value: Copyright Protection of Works of Information, 90 Colum. L.Rev. 1865, 1875 (1990) (noting that American and English copyright decisions in the eighteenth and nineteenth centuries "characterized copyrightable authorship in terms of the labor invested in the work"); Robert A. Gorman, Copyright Protection for the Collection and Representation of Facts, 76 Harv. L.Rev. 1569, 1572 (1963) ("It is no doubt true that most of the early cases dealing with map copyright referred to the requirement of original effort in exploring, surveying, making inquiries, and drafting the map solely on the basis of one's own investigations.").

23
However, in its twentieth century development, copyright law turned away from that view. Courts began to repudiate the earlier notion that an author's labor in discovering facts justified giving the author protection against the copying of those facts. See, e.g., Int'l News Serv. v. Associated Press, 248 U.S. 215, 234, 39 S.Ct. 68, 63 L.Ed. 211 (1918) (denying copyright protection to factual information contained within a newspaper article). The view developed that historical, scientific, or factual information belongs in the public domain, and that allowing the first publisher to prevent others from copying such information would defeat the objectives of copyright by impeding rather than advancing the progress of knowledge. See U.S. Const. art. I, § 8, cl. 8 (assigning Congress the power "[t]o promote the Progress of Science and useful Arts ..."); see also Hoehling v. Univ. City Studios, Inc., 618 F.2d 972, 979 (2d Cir.1980) (holding that historical facts are not protected by copyright); Miller v. Univ. City Studios, Inc., 650 F.2d 1365, 1372 (5th Cir.1981) (criticizing sweat of the brow justification for copyright). In Feist Publications, Inc. v. Rural Telephone Service Company, 499 U.S. 340, 347-48, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), the Supreme Court further explained that copyright protection can extend only to original authorship, and that the publication of facts, regardless how much effort was expended in discovering them, is not original authorship. The facts set forth in an author's writing were not created by an author's act of authorship, and are therefore not protected by copyright. Id. at 348, 111 S.Ct. 1282.

24
To the extent that the site plan sets forth the existing physical characteristics of the site, including its shape and dimensions, the grade contours, and the location of existing elements, it sets forth facts; copyright does not bar the copying of such facts. See id. at 350-51, 111 S.Ct. 1282 ("Facts, whether alone or as part of a compilation, are not original and therefore may not be copyrighted. A factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement."); see generally Pierre N. Leval, An Assembly of Idiots?, 34 Conn. L.Rev. 1049, 1056-58 (2002).

25
This does not completely dispose of Sparaco's claim relating to his representation of existing factual characteristics of the site. Although a mapmaker is not protected from copying of the factual information conveyed in the map, she is protected from the copying of any originality in the manner of expression employed in communicating the factual information. Without doubt, considerable skill and originality can be exercised by a mapmaker in the setting forth of unprotected information — in the selection or elimination of detail, the size, shape, and density of informative legends, the establishment of conventions relating to color or design to represent topographical or other features, and many other details of presentation. See Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 747-48 (2d Cir.1998) (noting that the only aspect of a map entitled to copyright protection is its "original material," including the "overall manner in which [the author] selected, coordinated, and arranged the expressive elements in its map, including color, to depict the map's factual content"); Mason, 967 F.2d at 142 (extending copyright protection to land survey maps depicting topographical features because they "possess[ed] sufficient creativity in both the selection, coordination, and arrangement of the facts that they depict, and as in the pictorial, graphic nature of the way that they do so"); see also County of Suffolk, New York v. First American Real Estate Solutions, 261 F.3d 179, 188 (2d Cir.2001).

26
The defendants, however, submitted evidence that the particular site plan employs standard cartographic features without originality, and Sparaco failed to submit evidence giving rise to a material issue of disputed fact rebutting this evidence. The district court was accordingly justified in concluding that the defendants were entitled to summary judgment as to the site plans to the extent they identify existing factual information about the site.

B.

27
In addition to representing existing physical features of the site, the site plan also includes proposed physical improvements. As to those elements, the district court denied copyright protection for a different reason. It relied on our decision in Attia to conclude that these depictions were conceptual ideas of a general nature, insufficiently detailed to be utilized in construction of the building. On that basis, the district court determined that the defendants' copying took only ideas, which are categorically denied copyright's protection.

28
In Attia, the plaintiff, an architect, alleged that New York Hospital and architects it had engaged infringed his copyright by making architectural plans that took elements from drawings he submitted for the modernization and expansion of the hospital's facilities. Attia's drawings focused on the development of a new building that would be constructed on a platform over a wide riverside highway. He alleged that the defendants infringed by taking a number of elements from his proposed designs, including: use of truss technology to transfer the weight of the new building spanning F.D.R. Drive; integration of the new structure with the pre-existing buildings by aligning the new floor heights to mesh with the old; alignment of the new building's corridors with the existing corridor to provide smooth internal traffic flow; insertion of a connecting roadway between 68th and 70th streets to make a continuous traffic loop through the hospital complex; and the general location of various hospital functions and services within the new facility. We held that there was no copyright infringement because the elements assertedly taken by the defendants from the plaintiff's drawings were limited to "concepts and ideas." Attia, 201 F.3d at 55.

29
We found that Attia's drawings were "highly preliminary" and at a "very general level of abstraction." Id. They consisted essentially of ideas for the expansion of the hospital-vague and general notions relating to placement of elements, traffic flow, and use of engineering technologies. It is a fundamental principle of copyright law that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation [or] concept." 17 U.S.C. § 102(b). See Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir.1960) (L.Hand, J.); Nichols v. Univ. Pictures Corp., 45 F.2d 119, 121 (2d Cir.1930) (L.Hand, J.); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][2] at 13-58 (1998). It is only if the copier has taken the author's expression or realization of the idea that infringement results. Where copying has occurred, the question whether there has been infringement can thus turn on whether the copying was only of the author's generalized ideas and concepts or of the author's more precisely detailed realization of those ideas. See Nichols, 45 F.2d at 121.

30
We concluded in Attia, even assuming the defendants had taken plaintiff's ideas, that such a copying of vague generalized notions did not constitute an infringement of copyright. There had been no taking of any detailed realization or expression of those ideas. See Attia, 201 F.3d at 55-56.

31
Relying on Attia, the district court ruled that the site plan's indication of new proposed elements — the building footprint, the contour of the parking lot, the location of curbs, fire lanes, utilities, light poles, trees, grading and contours — like Attia's proposals, fell into the category of unprotected ideas, rather than protected expression or realization of ideas. The district court stressed that "[n]ot only was the plan not sufficiently detailed to enable construction" but it "did not include any architectural details at all — just the placement of various features."

32
We respectfully disagree with the district court's analysis. In our view, the site plan was significantly different from Attia's proposal of ideas for the expansion of the hospital. Sparaco's site plan specifies more than vague, general indications of shape and placement of the elements. It provides detailed specifications for preparation of the site. Of course, the district court was correct that the site plan includes no architectural details and thus could not be used to construct the intended building. But the site plan was not intended as a plan for the construction of a building. It was a plan only for the preparation of the site. As such, it appears to be a fully realized plan capable of being used to guide actual construction work on numerous site preparation tasks, such as:

33
• preparation of the building footprint, including specific indentations in the layout of the building and designations for loading areas, common areas, and placements of utility structures;

34
• creation of parking lots, including precise details such as the distance between the lots and fences, the exact number of spaces, designations of spaces for the handicapped, distances between spaces, and dimensions;

35
• creation of drives, curbs, and walkways;

36
• displacement contours and elevation measurements resulting from the construction of the building, parking lots, and other structural additions;

37
• placement of utilities such as gas meters, drains, sewers, hydrants, and transformers;

38
• creation of fire lanes, fences, walls, and security gates;

39
• landscaping, including details as to the number, type, and placement of different trees, plants, and lighting fixtures;

40
• creation of sediment and erosion control measures, including water shelters, stabilized construction entrances, inlet protections, silt fences, earth dikes, and catch basins.

41
We note that Ramapo's Director of Building, Planning, and Zoning provided an affidavit, in which he stated, "The Albert R. Sparaco plan was acceptable to the Town and could have been built as approved." Ramapo's Director of Public Works offered a similar assessment, indicating that Sparaco's site plan "was a very detailed plan ... upon which the shown project could have been built in conformity with all of ... Ramapo's codes and regulations."

42
We do not mean to imply that technical drawings cannot achieve protected status unless they are sufficiently complete and detailed to support actual construction. The question at what point an idea, too vague or abstract to warrant copyright protection, becomes sufficiently concrete or detailed to constitute protected expression is the endlessly baffling subject of Judge Learned Hand's famous abstractions discussion in Nichols, 45 F.2d at 121. We do not suggest it can be reduced to a simple bright-line test.

43
Recognizing that the site plan was not an architectural plan for a building but only a plan for the preparation of a site, we conclude that it did not consist only of the kinds of general ideas that we ruled in Attia were not protected from copying. It included specific expression and realization of those ideas, with the consequence that copying could constitute an infringement of copyright. We therefore vacate the judgment of the district court to the extent that it granted judgment for the defendants relating to copying of the site plan's specifications for site improvement.2

CONCLUSION

44
The judgment of the district court is VACATED and REMANDED for further proceedings.

Notes:

1
The clause in question provided:
The survey notes, worksheets, plans, documents and drawings are instrumentalities of the service being provided for use solely for this particular project or application and shall remain the property of the surveyor [Sparaco]. The client [Schunkewitz and NMF] shall be permitted to retain copies for information and reference in connection with the Client's use of the property surveyed, designed or planned. The drawings shall only be used by the Client for the purpose for which they are prepared, unless the parties agree otherwise in a written and signed instrument and with appropriate compensation to the Surveyor. The parties hereto acknowledge that the surveyor is the author of the drawings and documents and shall retain all common law, statutory and other reserved rights, including the United States Copyright law, 17 U.S.C. § 101 et seq., and thereby retains sole ownership of the copyright in and to the drawings. In recognition of the Surveyor's claim to ownership and copyright, the Client shall not copy, reproduce, or adapt the drawings or engage in any other activity which would violate the copyright therein without the Surveyor's written consent. To do so shall be deemed a material breach of this contract. The surveyor's drawings, plans or other documents shall not be used by the client, owner, or any other party for additions to this project or for the completion of this project by others, except by a separate agreement in writing, and with appropriate compensation to the surveyor. Submission or distribution of maps, documents, etc. to meet official regulatory requirements, or for similar purposes in conjunction with this particular project is not to be construed as publication in derogation of the surveyor's reserved rights.

2
By making this ruling, we do not imply that plaintiff can necessarily perfect his claim of copyright infringement, much less that he can show damages in the event he succeeds in proving infringement. We note that plaintiff brought separate claims for infringement of copyright and for breach of his contractual rights. The claim in contract was for breach of Sparaco's contractual entitlement that the site plan would not be copied, reproduced or adapted without his consent, and that he would be employed and paid for any amendment that might be undertaken. That claim was settled. It therefore appears that Sparaco was compensated for defendants' unpermitted copying and their failure to use his services in amending the plan. If those losses have already been compensated, it is not easy to see what further damages might remain available for copyright infringement
In addition, we reject Sparaco's contention that the district court erred in granting summary judgment to defendants D & K and G & A and awarding attorneys' fees.